JOHN K. BERETTA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SALLIE WARD BERETTA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107076, 107077. Promulgated November 20, 1942.

*John J. Cox, Esq.*, for the petitioners.
*Donald P. Moyers, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge:* The petitioners contend that the $135,000 and the $90,000 distributed to shareholders by the Laredo Bridge Co. in 1937 represented capital distributions made in "partial liquidation" of that corporation within subdivisions (c) and (i) of section 115 of the Revenue Act of 1936.

Petitioners contend in the alternative that, if the Court should hold that the two distributions in question were not made in the partial liquidation of the corporation, nevertheless they were made out of capital, except to the extent of $45,006.73 accumulated earnings available for distribution, and that the portions of the distributions made out of capital should be applied to a reduction of the cost basis of the stock under section 115 (d) of the Revenue Act of 1936. The overpayment claims are based upon this alleged invasion of capital.

At the outset we shall state that it seems perfectly clear from the facts which are in the record that if there was a partial liquidation of the corporation in 1937 within the definition contained in section 115 (i), the $90,000 distributed by the corporation was not a part of it. This $90,000 was distributed as monthly dividends on the company's outstanding shares of stock. Petitioners returned for taxation the particular amounts of this $90,000 which they received. Undoubtedly such distributions were taxable dividends if there were earnings accumulated after February 28, 1913, or earnings and profits of the taxable year available for distribution. As to whether there were such earnings available for distribution at the times the $90,000 was distributed, we shall discuss and decide later in this opinion.

The pertinent provisions of section 115 of the Revenue Act of 1936 are printed in the margin.[1]

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distributions made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

(b) SOURCE OF DISTRIBUTIONS.—For the purpose of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

(c) DISTRIBUTIONS IN LIQUIDATION.—* * * amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *

(d) OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property.

\* \* \* \* \* \* \*

(h) EFFECT ON EARNINGS AND PROFITS OF DISTRIBUTIONS OF STOCK.—The distribution (whether before January 1, 1936, or on or after such date) to a distributee by or on behalf

At the hearing of these proceedings the Commissioner contended that, even though the Court should hold that the reduction of the capital stock of the Laredo Bridge Co. in 1937 from $500,000 to $250,-000, which reduction was put into effect by the company amending its charter and stamping on each certificate of its shares of stock that the par value of the stock was reduced from $100 per share to $50 per share, was a partial liquidation of the company under section 115 (i) of the Revenue Act of 1936, nevertheless the distributions which were made were taxable dividends in their entirety under the provisions of section 115 of the applicable revenue act.

The Commissioner no longer makes that contention. We interpret his brief to concede that if there was a partial liquidation of the company as defined by section 115 (i), then the $135,000 which the company distributed in 1937 in alleged partial liquidation was not a taxable dividend to the stockholders. In other words, we interpret the Commissioner's present position to rest squarely upon the proposition that there was no partial liquidation of the company in 1937; that, there being none, there were taxable dividends under section 115 (a) and (b), provided there were sufficient accumulated earnings of the corporation after February 28, 1913, or earnings and profits of the taxable year, with which to pay the dividends. Respondent contends there were such accumulated earnings sufficient to pay the dividends in question, including both the $135,000 and the $90,000 distributions. The Commissioner further contends that in any event the $90,000 which was distributed by the corporation to its stockholders as monthly dividends represented taxable distributions. In view of the respective contentions of the parties, the first question we have to decide is whether there was a partial liquidation of the company in 1937 under the provisions of section 115 (i), printed in the margin, *supra*.

There are many cases dealing with the subject as to whether a given distribution by a corporation is a distribution in partial liquidation of the corporation. A considerable number of these have been cited by the parties to these proceedings. We shall make no

of a corporation of its stock or securities or stock or securities in another corporation shall not be considered a distribution of earnings or profits of any corporation—

    (1) if no gain to such distributee from the receipt of such stock or securities was recognized by law, or

    (2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under section 115 (f) of the Revenue Act of 1934 or a corresponding provision of a prior Revenue Act.

As used in this subsection the term "stock or securities" includes rights to acquire stock or securities.

(i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

attempt to review all of them, but only those which we regard as especially pertinent to the question which we have to decide. Paul and Mertens, in their Law of Federal Income Taxation, vol. 1, sec. 8.95, discuss the meaning of "partial liquidation" as defined by section 115 (i) and, among other things, they say:

\* \* \* The statute, however, limits the kind of distributions which may for tax purposes be classified as "amounts distributed in partial liquidation". The statute recognizes *only* two forms of partial liquidation; *first*, where a distribution is made in complete cancellation or redemption of a part of the stock of a corporation, *second*, one of a series of distributions in complete cancellation or redemption of all or a part of the stock. Most of the difficulties encountered in this subject arise in connection with the second classification. Two principal difficulties are encountered: (1) in determining whether the distributions represent "a series of distributions" where the initial or subsequent distributions are not accompanied by a cancellation or redemption of stock, (2) in determining whether the corporation must be in liquidation in order to have a distribution in partial liquidation, as distinguished from an ordinary dividend.

It is clear that the alleged partial liquidation in the instant case does not come within the second classification named by Paul and Mertens in their discussion above. There is no contention by petitioners in the instant case that the 1937 distribution in question was one of a series of distributions made in the complete and final liquidation of the Laredo Bridge Co. Even if such a contention had been made, the evidence would not support it.

It is true that in 1937 the corporation parted with its ownership and title to that part of the bridge on the Mexican side of the border. However, it retained full ownership and title to that part of the bridge on the Texas side of the border and expected and intended to continue to operate that end of the bridge. It has done so and is still operating it and its business continues to be profitable.

So it can not be said that in 1937 the complete liquidation of the company was under way or that the distribution in question was one of a series of distributions to be made in the complete liquidation of the company. If it could be said that such was the case, then the fact that none of the corporation's shares were canceled and retired as a result of the distribution would not be material and the method used of reducing the par value of the stock from $100 to $50 per share would be sufficient and the cases of *Bynum* v. *Commissioner*, 113 Fed. (2d) 1, and *Commissioner* v. *Straub*, 76 Fed. (2d) 388, affirming 29 B. T. A. 216, relied upon by petitioners, would be in point. But, as we have already stated, it is clear that the distribution in question was not one of a series of distributions made in pursuance of a plan to completely liquidate the corporation. Therefore, we think the two above cited cases are not in point.

Petitioners argue, however, that there can be a partial liquidation of a corporation without there being an intent to completely liquidate

the corporation and cease business. That, of course, is true. The court points out that fact in its decision in *Commissioner* v. *Quackenbos*, 78 Fed. (2d) 156, wherein it said:

The force of the Commissioner's contention that the distribution was not a partial liquidating dividend such as is governed by section 115 (c) because the corporation was not at the time planning a cessation of business or in the process of final liquidation is hard to perceive. When subsection (c) refers to amounts distributed "in partial liquidation," it nowhere limits such distributions to payments made in. the course of winding up the corporation. Moreover, Article 625 of Regulations 74 provides that: "The phrase 'amounts distributed in partial liquidation' means. a distribution in complete cancellation or redemption of a part of its stocks, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." A redemption of a part of the stock of a corporation, whether it be of all of a class such as of preferred stock, or of a part of the common stock, has no necessary relation to the winding up of the corporation.

So this brings us to the question whether the first form of partial liquidation, defined in section 115 (i), is present in the instant case, we being definitely of the opinion that the second form of partial liquidation defined in the subsection is not present. The distribution of the $135,000 in question was not one of "a series of distributions in complete cancellation or redemption of all or a portion" of the company's stock. Was the distribution in question which the company made in 1937 made in complete cancellation or redemption of a part of its stock? On this point respondent says in his brief that "it must be recognized in the instant proceedings that there has been no cancellation of any of the company's stock, since the same number of shares are still outstanding, and there has been no redemption thereof unless it can. be said that the reduction in the par value of the stock constituted such redemption."

Paul and Mertens (vol. 1, *supra*, sec. 8.111), in discussing section 115 (g) of the statute, a subsection closely related to 115 (i), among other things, say:

The statutory provisions as to distributions having the effect of a taxable dividend contemplates a distribution in "cancellation or redemption" of stock * * *. A mere reduction of par value is not, it would .seem, a redemption or cancellation.

The authors cite as authority for this statement G. C. M. 8175, C.B. IX–2, p. 134, revoking I. T. 1833, C. B. 11–2, p. 25. In the G. C. M. referred to it is stated, among other things:

An opinion is requested regarding the status, for income tax purposes, of the sum of 3x dollars which the M Company distributed to its stockholders in 1928.

Action providing for the distribution under consideration was taken by the stockholders in meetings held on March 6 and March 27, 1928. The corporation had outstanding at the time y shares of common stock of a par value of $100 a share, and coincident with the distribution the par value of the stock was reduced, first to $85 a share and then to $70 a share. * * *

Section 115 (g), supra, deals with the cancellation or redemption of corporate stock as ordinarily understood, i. e., to complete cancellation or redemption, and does not refer to a mere reduction in the par value of stock. Accordingly, section 115 (g) is not applicable to the distribution here under consideration. The distribution is, however, governed by section 115 (a) and section 115 (b) of the Act, * * *

     *     *     *     *     *     *

Under sections 115 (a) and 115 (b), supra, the distribution in the instant case is taxable as a dividend to the extent of the earnings or profits on hand which were accumulated after February 28, 1913; and any portion of the distribution in excess of such earnings or profits constitutes a return of capital, and should be applied by the stockholders to reduce the cost or other basis of their stock.

    *     *     *     *     *     *     *

The Treasury regulations which are applicable to the instant case are Regulations 94. Article 115 (5) of those regulations seems to be framed in harmony with the foregoing G. C. M., and reads in part as follows:

* * * The term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, by the complete retirement of all shares of a particular preference or series, or by taking up all the old shares of a particular preference or series and issuing new shares to replace a portion thereof, or by the complete retirement of any part of the stock, whether or not pro rata among the shareholders.

It seems clear from the facts in the instant case that the first two methods mentioned in the foregoing regulations are not present here. Was the third method present? Was there a complete retirement of any part of the company's stock in the taxable year? We think not.

By the distribution of $135,000 which the corporation made in 1937, there was no *complete* retirement of any part of the company's shares of stock as we understand the meaning of that term as used in section 115 (i) and the applicable regulations. The company had outstanding 5,000 shares of common stock of a par value of $100 per share. Upon each and every one of these shares $27 in cash was distributed. Coincident with this cash distribution provision was made for a reduction in capital stock from $500,000 to $250,000. This was duly and legally accomplished and thereupon each of the company's outstanding shares of stock was reduced by an endorsement thereon from a par value of $100 per share to $50 per share. Five thousand shares still remained outstanding. This, we do not think, resulted in the complete cancellation or redemption of any part of the company's shares of stock.

Petitioners wish to treat the transactions in effect as if one-half of their sahres were completely canceled or redeemed, as in *Lida E. Malone* v. *Commissioner*, 128 Fed. (2d) 967. This fact is shown by the following circumstances. Petitioners originally acquired 439

shares of the company stock at a cost of $100 per share, making a total cost of $43,900. In 1922 they received a 100 percent stock dividend, which increased their number of shares to 878 shares. This stock dividend was a nontaxable stock dividend and thereupon each of petitioners' shares had a cost basis of $50 per share. Petitioners wish to treat the transactions involved here as if they had completely disposed of 439 shares, which had a cost basis of $50 per share, and as if gain or loss is to be measured by deducting this cost basis from the amount of the distributions which they received. That such is the substance of their contention we think is shown from the following quotation from one of the petitions, both of the petitions being the same in this respect:

(h) In 1920 and prior thereto petitioner paid $21,950.00 for the stock in Laredo Bridge Company which was surrendered to the company in 1937 when the capital stock of the company was reduced from $500,000.00 to $250,000.00. Petitioner actually received in total liquidation for the stock surrendered the sum of $19,-755.00 resulting in a loss of $2,195.00, 30% of said loss being $658.50. Petitioner failed to include this loss in his return and the Commissioner failed to credit this loss.

It seems clear to us that petitioners have sustained no loss. They have not finally disposed of any of their shares. They still own 878 shares of stock in the corporation, albeit reduced in par value from $100 per share to $50 per share. These shares, under our holding that the distributions which they received in 1937 were taxable, will still retain their cost basis of $50 per share, or a total of $43,900 for the 878 shares.

The precise question we have here to decide was decided by us in *Mabel I. Wilcox*, 43 B. T. A. 931 (now on review, C. C. A., 9th Cir.), and was decided contrary to the contention of petitioners.

The petitioners endeavor to distinguish the *Wilcox* case from the instant case on its facts. Petitioners say in that respect in their brief:

The case of *Mabel I. Wilcox* * * * is readily distinguished from the instant proceedings for it appeared that there was no intention to curtail the company's business operations to any material extent, but on the contrary the policy of the corporation was to expand its operations as conditions should warrant. There was absolutely no sound business reason for reducing the par value of the stock because *at the time the company had sufficient surplus from which the distribution could have been made*. Clearly the distribution was made for the purpose of benefiting the stockholders by means of a dividend. * * *

The aforesaid distinctions urged by petitioners would be pertinent if we had based our decision in the *Wilcox* case on section 115 (g) of the statute, but we expressly stated that that section was not applicable because it was only applicable where there had been a cancellation or complete redemption of shares of the stock of the corporation. As already stated, we held in the *Wilcox* case that no such complete can-

cellation or redemption took place by a distribution in cash followed by a reduction in the par value of the shares of stock. That was the essential fact upon which. we based our decision, and that fact is present in the instant case the same as it was in the *Wilcox* case, although under somewhat different facts and circumstances.

As we have already stated, the cases of *Bynum* v. *Commissioner*, *supra*, and *Commissioner* v. *Straub*, *supra*, strongly urged and relied upon by petitioners, were cases where the court found that the corporation had determined to completely liquidate and cease business and the distributions which were in question were of a series of distributions made in complete liquidation of the corporation. Under such circumstances the court held it was a partial liquidation under section 115 (i). We have no such situation here. In making this holding, we wish to make it plain that we are not doubting that the company effectively reduced its capital stock under the laws of Texas by the method used from $500,000 to $250,000. While a reduction of a corporation's capital stock is undoubtedly a "recapitalization," it does not necessarily mean there has been a partial liquidation. What we have to decide is not whether there has been a recapitalization of the corporation, but whether what was done was a partial liquidation of the company under the precise terms of the definition of section 115 (i), and that question, for reasons already stated, we decide in the negative.

Petitioners contend in the alternative that, even if we should hold that there was no partial liquidation of the corporation under section 115 (i) nevertheless none of the $135,000 distribution should be taxed as a dividend and only $45,006.37 of the $90,000 distribution should be taxed as a dividend, because the earnings of the company since February 28, 1913, which were available for distribution, did not exceed $45,006.37. Petitioners contend that all of the distributions in question, except the $45,006.37, were made from capital and that distributions of capital do not result in taxable income to the stockholder except as such distributions of capital exceed the cost basis of the stock. That, of course, is true under section 115 (d) of the Revenue Act if the distributions in question, except to the extent of $45,006.37, were made from capital and not from accumulated earnings.

Petitioners' contention, however, that they were made from capital and not from earnings is primarily based upon their contention that, when in 1922 the company capitalized $250,000 of its earnings and paid a nontaxable stock dividend to its stockholders, such $250,000 became capital of the company just the same as if it had been paid in as capital and no longer constituted accumulated earnings available for distribution as a dividend. The law is against petitioners in this contention. Subdivision (h) of section 115, supra, provides directly to

the contrary, as we construe it. This particular subdivision had its beginning in the Revenue Act of 1934 and was enlarged in the Revenue Act of 1936. In the report on the Revenue Act of 1936, S. Rept. 2156, 74th Cong., 2d sess. (1939-1 (Part 2) C. B. 678, 690), the Senate Committee on Finance, in referring to section 115 (h), *supra*, stated:

The rule, under existing law, with respect to the effect on corporate earnings or profits of a distribution which, under the applicable tax law, is a nontaxable stock dividend or a distribution of stock or securities in connection with a reorganization or other exchange, on which gain is not recognized in full, is that such earnings or profits are not diminished by such distribution. In such cases, earnings or profits remain intact and hence available for distribution as dividends by the corporation making such distribution, or by another corporation to which the earnings or profits are transferred upon such reorganization or other exchange. This rule is stated only in part in section 115 (h) of the Revenue Act of 1934, and corresponding provisions of prior Acts, but is the rule which is applied by the Treasury Department and supported by the courts in *Commissioner* v. *Sansome* (60 Fed. (2d) 931) ; *United States* v. *Kauffman*, (62 Fed. (2d) 1045) ; *Murcheson* v. *Comm.* (76 Fed. (2d) 641). While making no change in the rule as applied under existing law, the recommended amendment is desirable in the interest of greater clarity.

We, therefore, hold that in determining the amount of earnings or profits accumulated by the company after February 28, 1913, the $250,000 of earnings which the company capitalized in the form of a stock dividend in 1922 must be included in the computation to the extent which it represents earnings accumulated after February 28, 1913. When this is done, it seems clear that the company had on hand in 1937, when the distributions of $135,000 and $90,000 were made, sufficient earnings accumulated after February 28, 1913, to cover such distributions.

Petitioners in the last place contend that included in the $135,000 distribution was the reserve for depreciation allotted to the Mexican end of the bridge in the amount of $62,028.89 and that this $62,028.89 is not to be considered as a distribution from earnings and profits and is not subject to tax. Petitioners cite article 115-6, Regulations 94, and *Commissioner* v. *McKinney*, 87 Fed. (2d) 811, in support of their contention.

It is true, of course, that a distribution by a corporation to its stockholders of its depreciation reserve is not a taxable dividend and would be applied to a reduction in the cost basis of the stock. This is true because a depreciation reserve represents a return of capital. However, it must be borne in mind that under section 115 (b), *supra*, for the purposes of taxation effect, a corporation can not distribute to its stockholders its depreciation reserve as long as it has earnings and profits accumulated after February 28, 1913, sufficient to cover the distribution in question.

In view of the fact that, under our holding on the other points above discussed, the company had sufficient earnings accumulated after February 28, 1913, to cover both the distributions of $135,000 and $90,000, it can not be said that the company distributed to its stockholders any of its depreciation reserve, notwithstanding the recitals in the corporate resolution that part of the $135,000 was being distributed from the reserve for depreciation held by the company to cover the Mexican side of the bridge. See Paul and Mertens, Law of Federal Income Taxation, vol. 1, sec. 8.58. In this contention petitioners are not sustained.

Reviewed by the Court.

*Decision will be entered for respondent.*

OPPER, *J.*, concurs only in the result.

---

MURDOCK, *J.*, dissenting: If a corporation reduces its capital stock by one-half, there is a complete cancellation or redemption of one-half of its stock, regardless of whether one-half of the stock certificates are canceled or whether the par value of each certificate is cut in two. The statute defines amounts distributed in partial liquidation as a distribution "in complete cancellation or redemption of a part of its stock." Speaking of stock in a broader sense than mere certificates, there would be the same cancellation in each case. The word "stock," as used in the statute, does not mean stock certificates, but even if it did, the stock certificates are completely canceled in part, that is, to the extent of one-half, where the par value is reduced 50 percent. Therefore, I dissent from the holding in this case that a reduction in par value, accompanied by a distribution, can not be a partial liquidation.