BERETTA v. COMMISSIONER OF IN-
TERNAL REVENUE.

No. 10621.

Circuit Court of Appeals, Fifth Circuit.

March 3, 1944.

Rehearing Denied March 25, 1944.

John J. Cox, of San Antonio, Tex., for petitioner.

Ray A. Brown and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The taxpayer was a stockholder in the Laredo Bridge Company, a Texas corporation, which owned and operated a toll bridge across the Rio Grande River between the cities of Laredo, Texas, and Nuevo Laredo, Mexico. As of March 31, 1922, the capital stock of the company was $250,000, with a surplus in excess of $259,000. In April, 1922, the capital stock of the company was increased to $500,000 by the declaration of a 100% stock dividend to the stockholders of record. The par value of the shares was $100. The stock dividend was treated as a non-taxable transaction, by which the capital stock was increased to $500,000 and the surplus reduced to approximately $10,000.

The bridge was constructed under a concession from the Mexican Government and under a permit or franchise from the City of Laredo, Texas. The concession from Mexico contained a provision that at the end of fifty years the Mexican portion of the bridge should become the property of the government of Mexico upon the payment to the company of two-thirds of its then appraised value. This franchise expired June 26, 1937, and Mexico took over that end of the bridge in accordance with the terms of the franchise, and on July 24, 1937, paid the Bridge Company $75,962.28. On June 15, 1937, the directors of the corporation, after having voted to declare two two-percent cash dividends out of surplus earnings, also passed the following resolution:

"Resolved, that the Treasurer be, and hereby is, authorized to distribute to Stockholders of record as of June 7, 1937, substantially all of the net proceeds of the sale of the Mexican end of the bridge on receipt of payment from the Mexican Government."

But on September 14, 1937, the directors met again, at which time the Treasurer reported that the sale of the Mexican end of the bridge had resulted in a net loss to the capital of $68,630.53, which, together with the cash dividend previously voted but not yet paid, would result in the impairment of the capital stock of the company in the sum of $62,388.48. Nevertheless, the directors voted to distribute to the stockholders the sum of $135,000, representing the sum received from the sale to the Mexican Government, and a portion of the sum reserved for depreciation attributable to the end of the bridge which it no longer owned. At a special meeting of the stockholders, called for the purpose of authorizing the stock to be reduced from $500,000 to $250,000, the following resolution was passed:

"Be It Resolved, that the action of the Board of Directors of Laredo Bridge Company on September 14, 1936, authorizing the Treasurer to make a capital distribution of Twenty-seven per cent on September 30, 1937, to the Stockholders of record on September 27, 1937, be and hereby is, approved and ratified.

"Be It Resolved, by the Stockholders of Laredo Bridge Company that the capital stock of this corporation be, and the same hereby is, decreased from Five Thousand Dollars [sic] ($500,000.00) to Two Hundred Fifty Thousand Dollars ($250,000.00);

454

and the Board of Directors of this corporation is hereby authorized and directed to execute and file with the Secretary of the State of Texas an amendment to the charter of this corporation, and to take such other action as is necessary to make such decrease in the capital stock effective."

An appropriate amendment to the charter was approved by the Secretary of State of Texas on October 23, 1937, for the reduction of capital stock.

Taxpayer and wife, reporting income on the community basis, received $27,706 of the $135,000 so distributed, but did not report it as taxable income. Taxpayers also received, and duly reported as income, their proportionate part of the cash dividends declared by the company.

The taxpayer contends that the $135,000 distribution by the company was a capital distribution made in partial liquidation of the corporation under Sections 115 (c) and (i) of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Acts, pages 868, 871.[1]

The Commissioner contended that the distribution was not in partial liquidation because: (1) the corporation did not cancel nor redeem any part of its stock but merely reduced the par value of its shares; (2) the dividend was out of profits accumulated after February 28, 1913, and since the original increase in capital stock by the 100% stock dividend was out of earnings and profits the distribution here would be deemed to be out of earnings and profits, to be treated as income for tax purposes. The Tax Court sustained the Commissioner and we are asked to review the decision.

The first question to be determined is whether or not the dividend of $135,000 by the corporation to its stockholders was a distribution in partial liquidation. Section 115 (i) defines partial liquidation as "a distribution by a corporation in complete cancellation or redemption of a part of its stock." In the present case the par value of the shares of stock was reduced from $100 to $50 and a notation to that effect was stamped upon each certificate of stock, but no share of stock was canceled completely. We must, therefore, determine whether or not the $135,000 distribution and the attendant reduction of each share of stock from $100 to $50 resulted in the complete cancellation or redemption of a part of the stock and was a partial liquidation under said Section.

"Liquidation is generally deemed to be the operation of winding up the affairs of a corporation by realizing upon its assets, paying its liabilities, and appropriating the amount of its surplus or loss." Horn & Hardart Baking Co. v. United States, D.C., 34 F.Supp. 89, 90; 25 Words & Phrases, Perm. Ed., pp. 370, 371.

There must be a manifest intention to liquidate and a continuing purpose to terminate and dissolve the corporation. Its activities must be directed to that end. The question of whether a corporation is in liquidation is not necessarily resolved by corporate resolutions, but the solution lies in the intent, to be determined by the acts and doings of the corporation. The process of liquidation is not a status that can be assumed or discarded at will, but is a condition brought about by affirmative action, the normal and necessary result of which is winding up the corporation. The adoption or failure to adopt a resolution of liquidation is not controlling. Kennemer v. Commissioner of Internal Revenue, 5 Cir., 96 F. 2d 177.

This leads to the inquiry, whether or not the distribution or dividend was made with the intent that the corporation would re-

---

[1] Sec. 115, Revenue Act, 1936.
"(c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * * In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits.

    *    *    *    *    *    *    *

"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

main as a going concern or was it made with the affirmative intent to ultimately liquidate the company. Holmby Corporation v. Commissioner of Internal Revenue, 9 Cir., 83 F.2d 548; Canal-Commercial Trust & Savings Bank v. Commissioner of Internal Revenue, 5 Cir., 63 F.2d 619.

■ The same intent and purpose must be present in a partial liquidation.[2] Ordinarily, a partial liquidation is merely a step toward complete liquidation, anteceded by an intent to wind up the corporate affairs, but under Sec. 115 (i) (Rev. Act 1936), amounts distributed by a corporation to its stockholders in partial liquidation must also be used to completely cancel, or completely redeem, some part of the stock of the corporation.

In the present case there is no substantial evidence that the distribution was made with the intent to wind up, or to initiate a process of winding up, the affairs of the corporation. The Bridge Company was a going and profitable concern, still owning one-half, or more, of a valuable public utility, with a public duty to operate it. A partial reduction of a corporate liability is not ordinarily a partial liquidation of the corporation. In the absence of proof of an affirmative intent to wind up its affairs and to completely cancel a portion of its stock, all that the corporation here accomplished was a reduction of its capital stock with a concomitant and ratable reduction of its liability to its stockholders thereon. Even though the par value of each share of stock was reduced from $100 to $50 not a single share was completely canceled. The actual value of stock may be far in excess of its par value. The corporation's liability to its stockholders is not measured by the par value of its shares, but by the value of its net assets, which in liquidation must be ratably distributed to its outstanding shares. Even though a 27% dividend resulted in a 50% reduction in par value of its outstanding stock, the actual value of the stock was not necessarily reduced 50%, but each stockholder still had the same percentage of ownership, and would receive in final liquidation, the same ratio, of the corporate assets, distributable to its stockholders, as if the 27% distribution had not been made. No stock was canceled so as to permit each remaining share to receive a larger proportion in future distributions of the remaining assets. The distinction between a partial liquidation where stock is completely canceled and a diminution of capital by a mere reduction in par value of all outstanding shares is thus clearly demonstrated.

■ A reduction in par value of capital stock upon a pro rata payment to each stockholder without an intent to wind up its affairs does not render such payment a distribution in partial liquidation, and in the absence of such intent and in the absence of the complete cancellation or redemption of a part of the stock by such payment the payment is taxable as income. Wilcox v. Commissioner of Internal Revenue, 9 Cir., 137 F.2d 136.

■ Moreover, the Tax Court held that the entire $135,000 paid to the stockholders was a dividend out of earnings and profits, notwithstanding the recitals in the resolution of the directors that a portion thereof was the reserve for depreciation for that portion of the bridge which was sold to Mexico, and a portion was from the sale, at a loss, of a capital asset. The basis for this holding was that the $250,000 stock dividend, declared in 1922, was out of earnings and profits which had been accumulated since February 28, 1913, and that when the corporation, during the tax year here, reduced its capital stock by $250,000 the amount of its earnings which were capitalized in 1922 should have been included in the computation to the extent that they represent earnings or profits since February 28, 1913. In this manner the distribution would not result in impairment of capital, nor in the distribution of capital assets and reserves for depreciation. Where a corporation has available sufficient earnings and profits any distribution to stockholders will, for tax purposes, be deemed to have been made from its earnings and profits instead of from capital assets or reserves for depreciation. Sec. 115 (b), Rev. Act 1936, 26 U.S.C.A. Int.Rev.Acts, page 868.

■ A corporation may not completely avoid tax consequences to its stockholders by declaring a stock dividend out of profits in one year, later reducing its capital stock by the amount of such stock dividend, and

---

[2] In Bynum v. Commissioner of Internal Revenue, 5 Cir., 113 F.2d 1, 3, this Court, in defining partial liquidation, said:

"It is plain the act contemplates the liquidation of a corporation in an orderly manner by disposing of part of its assets and distributing those proceeds at the time and liquidating other assets at a later date."

then distributing, as capital assets, these profits under the guise of a partial liquidation. Walker v. Hopkins, Collector, 5 Cir., 12 F.2d 262; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570.

The Tax Court was right in both features of this case, viz., (a) the distribution was not one in partial liquidation; (b) the distribution will be deemed to have been made from the profits represented in the 1922 stock dividend, instead of from capital assets or reserves for depreciation.

The decision is affirmed.

SIBLEY, Circuit Judge, dissents.