A. J. LONG, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2939. Promulgated June 28, 1945.

*H. J. Siebenthaler, Esq.*, and *Murray M. Flack, Esq.*, for the petitioner.

*John H. Pigg, Esq.*, for the respondent.

330

**OPINION.**

Leech, *Judge*: In December 1939, the A. Nash Co. had issued and outstanding 23,417 shares of common stock of the par value of $25 per share, which was the only class of stock it was authorized to issue at that time. Of these shares petitioner held 12,121, a majority interest. On December 20, 1939, that company authorized a cash distribution of $9 per share, which was paid on December 29, 1939. Petitioner received a total amount of $109,089. On his 1939 Federal income tax return he reported as income $5,441.12, treating the balance, $103,647.88, as a return of capital. The respondent determined the entire amount was taxable as an ordinary dividend under section 115 (a) and (b) of the Internal Revenue Code.[1]

Petitioner argues that respondent's determination is erroneous on three grounds. The first and principal ground is that petitioner was a

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

(b) SOURCE OF DISTRIBUTIONS.—For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113. * * *

purchaser for value and can not be taxed as receiving an ordinary dividend where the distribution consists of earnings which were capitalized by stock dividends prior to his purchase. Petitioner has requested a finding that he had no knowledge prior to his purchase of these shares that part of the capital structure consisted of earnings and profits capitalized through stock dividends. We have not done so, since we are not convinced that the evidence supports such a finding, if material, and we do not so regard it. Petitioner relies upon *Commissioner* v. *Cordingley*, 78 Fed. (2d) 118; *Parker* v. *United States*, 88 Fed. (2d) 907; and *De Nobili Cigar Co.*, 1 T. C. 673; affd., 143 Fed. (2d) 436, in support of his contention. Assuming, *arguendo*, that petitioner was an innocent purchaser for value, the authorities he relies upon are not controlling under the facts here disclosed. Each of those cases involves the application of section 115 (g) [2] and the facts disclose that a redemption or cancellation of some part of the capital stock had taken place. The deficiency here was not determined under section 115 (g), and the respondent asserts that that section has no application. We agree. The documentary proof clearly shows that there was here no cancellation or redemption, except with respect to the retirement, in 1933, of the 2,298 shares held in the company's treasury, which has no bearing upon the cash distribution in 1939 we have under consideration. During the period January 1, 1921, to June 30, 1924, earnings and profits were capitalized by the issuance of nontaxable stock dividends to the extent of 16,875 shares of a par value of $100 per share, or $1,687,500. By corporate action and charter amendment the par value of the 25,715 then outstanding shares was reduced from $100 to $25 per share, thus reducing the capital by $1,928,625. The 2,298 shares were then retired. Thus the stated capital was reduced from $2,571,500 to $585,425. In a letter dated March 7, 1933, to the stockholders, proposing the reduction of the par value of the shares, it is stated:

The capital surplus thereby created will be used in part to absorb the deficit of operations for the current and past years and to provide such reserves as may be considered necessary to meet such losses as may be sustained in 1933 in the liquidation of non-profitable departments.

By letter dated March 15, 1933, the stockholders were informed that the amendment to the charter reducing the par value of the shares from $100 to $25 had been effected. They were further advised:

As a result of creating this Capital Surplus, the Company will be in a position to declare dividends providing business conditions justify; whereas, if we had

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

not made the change in the par value of the common stock, it would be necessary to defer all dividends until the earnings of your company absorbed the operating deficits of current and past years.

\* \* \* \* \* \* \*

The Management is confident that the Company is on a sound basis, and with all expenses cut drastically, and with the closing of certain non-profitable departments of our business, we are in a position to march on.

It is clear that at the time of the reduction of the par value of the shares there was no thought of redemption or cancellation, or of liquidation of the company. The purpose to be served was obviously, as stated, to enable the company to declare and pay cash dividends. We have held that a mere reduction in the par value of the capital stock is not a cancellation or redemption of the shares. *Mabel I. Wilcox,* 43 B. T. A. 931; affd., 137 Fed. (2d) 136; *John K. Beretta,* 1 T. C. 86; affd., 141 Fed. (2d) 452. Petitioner suggests that we have taken a more liberal view in the recent cases of *Estate of Henry E. Mills,* 4 T. C. 820, and *R. D. Merrill Co.,* 4 T. C. 955. We do not so view these cases. The factual circumstances involved are so dissimilar to those in the instant case that we think they furnish no support for petitioner's position. We conclude there was no cancellation or redemption of the shares of capital stock. Petitioner continued to hold his stock. Thus it is immaterial whether he was an innocent purchaser for value or not.

The next contention of petitioner is that a bona fide capitalization of earnings by the issue of stock dividends renders them "capital" and a subsequent distribution thereof is not a distribution of "earnings" taxable as a dividend. *Commissioner* v. *Quackenbos,* 78 Fed. (2d) 156; *Patty* v. *Helvering,* 98 Fed. (2d) 717; *Bedford* v. *Commissioner,* 144 Fed. (2d) 272. Since petitioner's brief was filed the Supreme Court of the United States has reversed the Circuit Court of Appeals decision in the *Bedford* case, 325 U. S. 283. It was there held that a distribution out of accumulated earnings and profits previously capitalized by a nontaxable stock dividend is taxable as an ordinary dividend under section 115 (a) of the Internal Revenue Code. That decision finally disposes of the petitioner's contention that earnings and profits capitalized through stock dividends retain their character as capital.

Finally, petitioner argues that the reduction of the par value of the shares, followed by the 1939 distribution of part of the funds thus made available, constitutes a partial liquidation as defined in section 115 (i) [3] and the amounts received should be applied first to the reduc-

---

[3] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

tion of his cost. The views expressed in answer to petitioner's prior contentions compel the conclusion that this argument is likewise unsound. It is based on the premise that earnings once capitalized through stock dividends retain their character as capital and a subsequent distribution thereof is a "liquidation" *pro tanto*. That this is not so appears to have been finally set at rest by the *Bedford* decision, *supra*. As heretofore observed, one of the main purposes underlying the reduction in the par value of the shares was to permit the declaration and payment of cash dividends. The other stated reasons, i. e., to absorb the deficit and to provide reserves to meet losses that might be sustained from the liquidation of the nonprofitable departments, having been accomplished, the company was in a position to carry out its main purpose of declaring and paying cash dividends. We perceive no other connection between the reduction of the par value of the shares as of December 30, 1932, and the 1939 resolution providing for the cash distribution of $9 per share. In the 1939 resolution no mention is made of any plan or purpose to liquidate, nor is there any reference to the previous reduction of the par value of the shares. The corporate minutes of December 20, 1939, providing for the cash distribution recite that as of November 30 the current assets were $851,764 and liabilities $181,129, leaving a working capital of $670,635. They state that the inventory is in "very excellent condition," that "it" amounted to $443,000 against $409,000 for the previous year, and that "our competitive position next spring will be good and we are anticipating an increase in volume." These optimistic statements indicate quite clearly that a partial liquidation was not considered or contemplated at that time. We conclude there was no partial liquidation as defined in section 115 (i). There is no dispute that, except for the capitalization of the stock dividends, the company's accumulated earnings and profits would be in excess of $200,240.78, or $8.5511 on the 23,417 then outstanding shares alleged to have been distributed out of "capital surplus." The fact that the company carried the amount resulting from the reduction of the par value of the shares as "capital surplus" does not alter the fact that a part, at least, was "earned income" for Federal tax purposes. *Foster* v. *United States*, 303 U. S. 118; *Bedford* v. *Commissioner*, *supra; Commissioner* v. *Wheeler*, 324 U. S. 542. We conclude that the entire amount of $109,089, received by petitioner in 1939 as a cash distribution from the A. Nash Co., was a "dividend" as defined by section 115 (a) and taxable as an ordinary dividend under section 22 (a). The respondent is sustained.

*Decision will be entered for the respondent.*