JOSEPH H. MILLER AND ROSE B. MILLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SAMUEL MILLER AND EMMA S. MILLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51489, 51492.    Filed April 20, 1956.

*David Perris, Esq.*, for the petitioners.
*Donald G. Corley, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies in the income tax of the petitioners for 1948 as follows:

| Docket No. | Petitioners | Amount |
|---|---|---|
| 51489 | Joseph H. and Rose B. Miller | $1, 233. 10 |
| 51492 | Samuel and Emma S. Miller | 7, 116. 98 |

The sole issue is whether cash distributions in 1948 by the Cleveland Towel Supply Co., to Joseph of $2,375 and to Samuel of $12,125 were taxable dividends, as contended by the Commissioner, or a return of capital, as contended by the petitioners. The facts have been stipulated.

The Joseph Millers and the Samuel Millers, each using a cash basis, filed joint income tax returns for the year in question with the collector of internal revenue for the eighteenth district of Ohio.

The Cleveland Towel Supply Co., an Ohio corporation, was organized on July 14, 1928, with an authorized capital of $500, consisting of 100 shares of no-par common stock. Its authorized capital stock was increased on July 31, 1928, to $250,000 of 7 per cent cumulative and nonparticipating preferred stock (2,500 shares at $100 par value) and $50,000 of common stock (500 shares no-par-value).

The no-par common stock was issued as follows:

|  | Shares | |  |
|---|---|---|---|
| Samuel Miller | 275 | (55%) | $27,500 |
| Joseph H. Miller | 125 | (25%) | 12,500 |
| Meyer H. Miller | 50 | (10%) | 5,000 |
| Morris Miller | 50 | (10%) | 5,000 |
|  | 500 | (100%) | $50,000 |

The corporation's stockholders unanimously resolved on December 30, 1935:[1]

that whereas, the audit of the accountant of the Company shows that a reduction in the stated capital is advisable, and that the stated capital shall, therefore, be reduced by writing down the capital, which is represented by 500 shares of common non-par stock, the consideration of which had been previously fixed at $100.00 a share be reduced from $50,000.00 to $2,500.00 and being 500 shares of common, non-par stock, at a consideration for each share of non-par stock at $5.00 per share, and that the books of account shall be changed to conform to the stated capital as reduced, and the President and Secretary be authorized to proceed in accordance with the provisions of Section 8623-39 of the General Code of Ohio.

The corporation's charter was so amended on January 17, 1936. The $47,500 reduction was credited on that day to capital surplus account on the books of the corporation.

There was a transfer on November 1, 1937, of the amounts involved from capital surplus to separate accounts for each common stockholder on the books of the corporation in proportion to the amount of common stock held by him. The parties have stipulated that "Such transfer upon the books of the corporation did not result to any extent in a taxable distribution to the common stockholders at that time."

The accounts for the stockholders were shown on the income tax returns filed by the corporation as a liability, under the caption "Due Stockholders."

A cash disbursement of $10,000 was made on December 31, 1937, to the common stockholders and a corresponding debit was made to the

[1] The corporate directors resolved at that time "that $50,000.00 of preferred stock be redeemed and paid off at $100.00 per share, * * * and said certificates of preferred stock so redeemed [be] canceled, * * *." There is no issue here with respect to those preferred shares.

stockholders' accounts. The Internal Revenue Service treated this cash disbursement as a taxable dividend, and on October 31, 1939, the following entry was made on the corporation's books:

|  | Debit | Credit |
|---|---|---|
| Surplus | $10,000 | |
| Samuel Miller | | $5,500 |
| Joseph H. Miller | | 2,500 |
| Meyer H. Miller | | 1,000 |
| Morris Miller | | 1,000 |

To re-establish amounts due stockholders in accordance with Internal Revenue ruling that funds were not withdrawal of capital, but were considered dividends paid from earned surplus.

An analysis of the stockholders' accounts is as follows:

| | Date entered | Date paid | Samuel Miller | Joseph H. Miller | Meyer H. Miller and heirs | Morris Miller |
|---|---|---|---|---|---|---|
| 1. From capital surplus | 11- 1-37 | | $26,125 | $11,875 | $4,750 | $4,750 |
| 2. Cash disbursed | 12-31-37 | | 5,500 | 2,500 | 1,000 | 1,000 |
| 3. Balance | | | $20,625 | $9,375 | $3,750 | $3,750 |
| 4. From earned surplus | 10-31-39 | | 5,500 | 2,500 | 1,000 | 1,000 |
| 5. Balance October 31, 1939 | | | $26,125 | $11,875 | $4,750 | $4,750 |
| 6. Cash disbursed | 10-31-43 | 10-28-43 | $5,000 | $5,000 | $4,750 | $4,750 |
| 7. Cash disbursed | 10-31-44 | 10-24-44 | 2,000 | 1,000 | | |
| 8. Cash disbursed | 10-31-45 | 5- 5-45 | 4,000 | 1,500 | | |
| 9. Cash disbursed | 9-30-47 | 7-17-47 | 3,000 | 2,000 | | |
| 10. Total (lines 6-10) | | | $14,000 | $9,500 | $4,750 | $4,750 |
| 11. Balance October 1, 1947 (line 5 less line 10) | | | $12,125 | $2,375 | | |
| 12. Cash disbursed | 9-30-48 | 9-16-48 | $3,000 | $1,000 | | |
| 13. Cash disbursed | 9-30-49 | 12- 1-48 | 3,000 | 1,000 | | |
| 14. Cash disbursed | 9-30-49 | 12-30-48 | 6,125 | 375 | | |
| 15. Total (lines 12-14) | | | $12,125 | $2,375 | | |
| 16. Balance September 30, 1949 (line 11 less line 15) | | | | | | |

The corporation's books disclose earned surplus, net profit after taxes, and dividends paid during the indicated fiscal years, as follows:

| Year ended | Earned surplus as of year ended | Net profit after taxes for year ended | Dividends paid during year ended |
|---|---|---|---|
| *October 31* | | | |
| 1935 | $25,002.33 | $3,387.83 | $10,500 |
| 1936 | 20,511.27 | 13,508.94 | 18,000 |
| 1937 | 26,397.79 | 17,886.52 | 12,000 |
| 1942 | 16,477.16 | 21,087.86 | 12,000 |
| 1943 | 234.91 | 7,757.75 | 24,000 |
| 1944 | [1] 1,733.34 | 8,031.75 | 10,000 |
| 1945 | [1] 1,511.62 | 10,221.72 | 10,000 |
| 1946 | 3,912.86 | 13,424.48 | 8,000 |
| *September 30* | | | |
| 1947 | 29,801.75 | 33,888.89 | 8,000 |
| 1948 | 60,371.17 | 38,579.42 | 8,000 |
| 1949 | 83,374.39 | 37,003.22 | 18,000 |

[1] Deficit.

Samuel and Joseph received cash disbursements from the corporation in 1948 of $12,125 and $2,375, respectively. Those amounts were treated by them as a return of capital and were not reported on their income tax returns for 1948. The Commissioner included them in the petitioners' income as "taxable dividends" under sections 22 (a) and 115 (a) and (b) of the Internal Revenue Code.

The principal argument made by the petitioners against the determinations of the Commissioner is that the corporation, on December 30, 1935, reduced its stated capital, represented by 500 shares of its no-par common stock, from $50,000 to $2,500; it amended its charter on January 17, 1936, to conform to this action; it thus created an indebtedness to the common stockholders of $47,500; and the amounts in controversy were payments made during the taxable year to discharge this indebtedness and were not dividends.

The $47,500 was credited to capital surplus account on the books of the corporation on January 17, 1936, and it was not until November 1, 1937, that the amount was transferred on the books from capital surplus to the separate accounts of the stockholders. It could have remained indefinitely as paid-in surplus. All capital and surplus, particularly paid-in surplus, in a sense constitute obligations of a corporation to its stockholders. Such items are referred to as the stockholders' equity in the corporation. However, this does not mean that those items are an indebtedness which can be paid to the stockholders without the tax consequences of a "distribution." The question here is what are the tax consequences in 1948 of the payments in question.

Section 115 (a), as it applies to the year 1948, with exceptions not material hereto, defines dividend as "any distribution made by a corporation to its shareholders, whether in money or other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * *." Subsection (b) provides: "For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits." There are other provisions of section 115 but they need not be discussed because they were not relied upon by the Commissioner or pleaded and argued by the petitioners to escape the Commissioner's determination. For example, the petitioners have not pleaded, argued, or even suggested that there was a partial liquidation affecting the common stock within the provisions of section 115 (c) and (i). Furthermore, the evidence would not support such a contention. The preferred shares were redeemed and canceled, but not the common shares. There are cases holding that a mere reduction in the authorized or stated capitalization supported by par value common stock is not a cancellation or redemp-

tion of the shares within the meaning of subsection (i). *A. J. Long, Jr.*, 5 T. C. 327, affd. 155 F. 2d 847; *John K. Beretta*, 1 T. C. 86, affd. 141 F. 2d 452, certiorari denied 323 U. S. 720; *Mabel I. Wilcox*, 43 B. T. A. 931. The petitioners' position here, where their stock had no par value, is certainly no stronger.

Payment by a corporation of a debt incurred for a proper consideration in the operation of its business is, of course, not a distribution at all, but the payments in question were not of that kind. They were distributions by the corporation to its stockholders within the meaning of the word "distribution" as used in section 115. A payment of this kind made by a corporation which had no earnings or profits would still be a distribution. See subsec. (d). However, that subsection does not apply here because this corporation had earnings and profits in 1948 in excess of the total distributions which it made during that year. The words of subsection (b) that "every distribution is made out of earnings or profits to the extent thereof" create a conclusive statutory presumption as to the source of the distribution. *Leland* v. *Commissioner*, 50 F. 2d 523, 525, affirming 18 B. T. A. 795, certiorari denied 284 U. S. 656. The distributions in controversy are dividends within the meaning of subsections (a) and (b) since no other provision of section 115 applies, and they are taxable under section 22. *Dunton* v. *Clauson*, 67 F. Supp. 839; *A. J. Long, Jr., supra; John K. Beretta, supra; Mabel I. Wilcox, supra.*

The only other argument of the petitioners is in the alternative and is that, if there ever was a taxable distribution as a result of the decrease in the authorized and stated capital represented by the no-par common stock, it occurred in 1936. These taxpayers used a cash receipts basis of reporting income. They received no cash in 1936, either actually or constructively. A distribution received by a cash basis stockholder in the taxable year is no less taxable to him in that year merely because it was credited to his account on the books of the corporation in a prior year under circumstances which did not amount to constructive receipt at the time of the crediting. The cash in question was received for the first time for tax purposes in 1948. There is no merit to the petitioners' alternative contention. Furthermore, the parties have stipulated that the transfer of the $47,500 on November 1, 1937, from capital surplus to the separate accounts of each common stockholder on the books of the corporation "did not result to any extent in a taxable distribution to the common stockholders at that time." This stipulation negatives any constructive receipt at that time.

*Decisions will be entered for the respondent.*