WILLIAM C. KIND AND HELENE KIND, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6386–67. Filed March 25, 1970.

*Allan Bakst*, for the petitioners.
*James Q. Smith*, for the respondent.

602

604

OPINION

Section 331(a)(1) [1] provides that amounts distributed in complete liquidation of a corporation "shall be treated as in full payment in exchange for the stock." The effect of this provision is to tax the gain included in a distribution on the liquidation of a corporation at capital gain rates if the stock was held for more than 6 months. Secs. 1201, 1222. In contrast, section 316(a) broadly defines the term "dividend" to include "any distribution of property made by a corporation to its shareholders" out of its earnings and profits, and section 301(c)(1) provides that any distribution which is a "dividend" shall be "included in gross income," i.e., taxed at ordinary rates.

The problem here presented is to determine in which category—liquidating or dividend distributions—the assets received by petitioner from Kind I but not transferred by him to Kind II fit. We conclude that they were distributions in liquidation of Kind I.

Respondent bases his contention that the retained assets constituted dividend distributions upon alternative grounds. First, he maintains that Kind I was never liquidated within the meaning of section 331 since the business was continued under petitioner's ownership, first as a sole proprietorship and later as Kind II. Alternatively, respondent urges that the purported liquidation was only one step in a larger transaction which, when considered as a whole, constituted a reorganization under section 368(a)(1)(D) or (F),

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

and the retained assets are, therefore, to be treated as "boot" under section 356, undiminished by petitioner's basis for his Kind I stock.

As to respondent's first argument, neither the Code nor the regulations define the term "liquidation." The law is settled, however, that the question of whether a corporation has been liquidated is one of fact. *Genecov* v. *United States*, 412 F. 2d 556, 562 (C.A. 5, 1969); *Transportation Service Associates, Inc.* v. *Commissioner*, 149 F. 2d 354, 355 (C.A. 3, 1945), affirming a Memorandum Opinion of this Court. In deciding this factual issue, the inquiry is not whether the corporation was formally dissolved under State law, *Pridemark, Inc.* v. *Commissioner*, 345 F. 2d 35, 41 (C.A. 4, 1965), affirming in part and reversing in part 42 T.C. 510 (1964); *Wier Long Leaf Lumber Co.* v. *Commissioner*, 173 F. 2d 549, 551 (C.A. 5, 1949), affirming in part and reversing in part 9 T.C. 990 (1947), but whether the corporation intended to and actually did wind up its affairs, gather its resources, settle its liabilities, cease engaging in business activity, and distribute its remaining assets to its shareholders. "There must be a manifest intention to liquidate and a continuing purpose to terminate and dissolve the corporation. Its activities must be directed to that end." *Beretta* v. *Commissioner*, 141 F. 2d 452, 454 (C.A. 5, 1944), affirming 1 T.C. 86 (1942), certiorari denied 323 U.S. 720 (1944).

Turning to the facts of the present case, the record shows that Kind I was completely liquidated on May 31, 1962. Acting through petitioner, its sole shareholder, the corporation quite clearly intended to, and did, wind up its affairs and distribute its surplus, ceasing all active business on that date. Petitioner succeeded to ownership of all of the assets, including the going florist shop business, subject to outstanding liabilities. He notified creditors of the change of ownership, established new business bank accounts, adopted a new form for billing customers, and changed existing insurance policies, vehicle registrations, and local tax certificates to reflect the new ownership. For 7 months he operated the business as a sole proprietorship without the protection of a corporate umbrella. In view of these objective facts, we give no weight to petitioner's failure to introduce into evidence the formal resolution to liquidate the corporation or to establish its precise contents. See *Alameda Realty Corporation*, 42 T.C. 273, 281 (1964); *Genecov* v. *United States, supra* at 562; cf. *Beretta* v. *Commissioner, supra* at 454. His failure to do so was adequately explained.[2]

---

[2] The attorney who had custody of the minute and stock transfer books died, and a search of the office which he had occupied, as well as of a warehouse in which some of his papers had been stored, failed to locate them. However, we note that petitioner did introduce a letter, dated May 18, 1962, to the attorney from his accountant, requesting among other things that he prepare the "resolution to liquidate and transfer all assets, subject to all liabilities, to the sole stockholder in exchange for outstanding certificates of stock."

Respondent argues that a valuable asset—the corporate name and the goodwill attached thereto—remained in "corporate solution," since Kind I was not formally dissolved and its charter and name canceled until Kind II, with a similar name, was created. But the goodwill of Kind I's florist shop did not remain in the lifeless hulk of the corporate shell. It was effectively transferred to the sole proprietorship, which succeeded to Kind I's management, employees, business location, and style of business. In addition, the proprietorship also acquired what doubtless was the single most valuable component of the corporation's goodwill—petitioner's personal relationships with Kind I's major customers, resulting from his almost exclusive attention to sales promotion throughout his association with the business. We are satisfied that no significant assets remained in Kind I.

Mixing his alternative arguments together, respondent relies upon sections 1.301–1(1)[3] and 1.331–1(c)[4] of the Income Tax Regulations. He contends that where the operating assets of a "liquidated" corporation are eventually transferred to a second corporation owned by the same shareholder(s), a true liquidation does not occur. Instead, he suggests, the net result is a retention of the operating assets in corporate solution through a reorganization, while the nonoperating assets (such as cash) are distributed to the shareholder(s) in a separate transaction which is the "equivalent and essence" of a dividend under section 301.

Without attempting to determine the reach of the vague language of these regulations[5] or to resolve the effect thereon of the specific provisions of section 331(b),[6] we do not think the regulations aid respondent's cause. Cf. *Simon* v. *United States*, 402 F. 2d 272, 278 (Ct. Cl. 1968).

Regulations section 1.301–1(1) refers to a transaction which "takes place at the same time as another transaction" and section 1.331–

---

[3] Sec. 1.301–1 Rules applicable with respect to distributions of money and other property.

(1) *Transactions treated as distributions.* A distribution to shareholders with respect to their stock is within the terms of section 301 although it takes place at the same time as another transaction if the distribution is in substance a separate transaction whether or not connected in a formal sense. This is most likely to occur in the case of a recapitalization, a reincorporation, or a merger of a corporation with a newly organized corporation having substantially no property. * * *

[4] Sec. 1.331–1 Corporate liquidations.

(c) A liquidation which is followed by a transfer to another corporation of all or part of the assets of the liquidating corporation or which is preceded by such a transfer may, however, have the effect of the distribution of a dividend or of a transaction in which no loss is recognized and gain is recognized only to the extent of "other property." See sections 301 and 356.

[5] For a critical analysis of these provisions, see Lane, "The Reincorporation Game: Have the Ground Rules Really Changed?" 77 Harv. L. Rev. 1226–1231 (1964).

[6] SEC. 331. GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUIDATIONS.

(b) NONAPPLICATION OF SECTION 301.—Section 301 (relating to effects on shareholder of distributions of property) shall not apply to any distribution of property in partial or complete liquidation.

1(c) to a "liquidation which is followed by a transfer to another corporation." Cf. *Davant* v. *Commissioner*, 366 F. 2d 874, 882–883 (C.A. 5, 1966), affirming in part and reversing in part 43 T.C. 540 (1965). However, we are convinced that the distribution in May 1962 of the assets not subsequently transferred to Kind II was not to any extent separate from the liquidation, but was an integral part of it. See *Commissioner* v. *Berghash*, 361 F. 2d 257 (C.A. 2, 1966), affirming 43 T.C. 743 (1965); *Estate of Henry P. Lammerts*, 54 T.C. 420 (1970); *Joseph C. Gallagher*, 39 T.C. 144, 158–159 (1962). And what transpired here certainly was not merely a "formal liquidation * * * followed *instanter* by a prearranged reincorporation." *Estate of Henry P. Lammerts*, *supra* at 449 (dissenting opinion). To the contrary, as discussed above, on May 31, 1962, Kind I was liquidated both in form and substance; and Kind II was created for reasons which did not exist on that date. It is true that our conclusion results in taxing as capital gain the distribution of Kind I's accumulated earnings and profits. But this is a natural, statutorily approved consequence of a genuine liquidation. See *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950).

If the liquidation of Kind I and the formation of Kind II could be considered parts of the same transaction—i.e., if a "plan of reorganization" existed from the outset—we would have no difficulty in fitting that transaction within the definition of a reorganization under section 368(a)(1)(D) or (F)[7] and holding that the retained assets are to be treated as "boot." Secs. 354 and 356.[8] But the only

---

[7] SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.
 (a) REORGANIZATION.—
  (1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—
    \*   \*   \*   \*   \*   \*   \*
   (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;
    \*   \*   \*   \*   \*   \*   \*
   (F) a mere change in identity, form, or place of organization, however effected.
[8] SEC. 354. EXCHANGES OF STOCK AND SECURITIES IN CERTAIN REORGANIZATIONS.
 (a) GENERAL RULE.—
  (1) IN GENERAL.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
 Sec. 356(a)(1) amplifies the general rule of sec. 354(a)(1) as follows:
SEC. 356. RECEIPT OF ADDITIONAL CONSIDERATION.
 (a) GAIN ON EXCHANGES.—
  (1) RECOGNITION OF GAIN.—If—
   (A) section 354 or 355 would apply to an exchange but for the fact that
   (B) the property received in the exchange consists not only of property permitted by section 354 or 355 to be received without the recognition of gain but also of other property or money,
 then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

conceivable basis for finding a plan of reorganization here would be the fact that the second corporation followed the first, and this objective fact alone is insufficient to show that the subsequent incorporation was the result which petitioner sought when he began these transactions. *Charles R. Mathis, Jr.*, 19 T.C. 1123 (1953), acq. 1953-2 C.B. 5.

There is ample, uncontradicted, evidence that petitioner had no intention to reincorporate at the time of the liquidation of Kind I, or for months thereafter. The evidence is overwhelming that petitioner intended in May 1962 to carry on the florist business in noncorporate form for the foreseeable future. It was only as a result of petitioner's subsequent introduction to an entirely new product that, on the advice of his accountant and lawyer and in the light of the greater financial risks, he decided in November 1962 to do business in the corporate form. These facts make it clear that Kind I's liquidation and Kind II's incorporation were not interdependent steps in a single, integrated transaction.

Since we have found that petitioner did not intend to establish a new corporation at the time the original corporation was liquidated, it cannot be said that the transfer of assets to the new corporation was in pursuance of a plan of reorganization. See *Charles R. Mathis, Jr., supra* at 1128-1129; *Simon v. United States, supra* at 279. Given the intent to reorganize, a formal plan need not be adopted. But given the lack of such intent, a plan cannot be manufactured by afterthought. See, e.g., *Peeler Hardware Co.*, 5 T.C. 518 (1945), affd. 155 F. 2d 974 (C.A. 5, 1946).[9]

Consistent with the foregoing conclusions,

*Decision will be entered for the petitioners.*

---

[9] Having concluded that there was no reorganization under either sec. 368(a)(1)(D) or (F), we do not reach respondent's contention that sec. 356 does not command that petitioner's gain be reduced by his basis in the stock of the reorganized corporation.