OPINION. Habron, Judge: The question presented by the pleadings is whether the Slate Co.’s distributions of $150,000 in 1940 were distributions in partial liquidation within section 115 (c) of the Internal Revenue Code, as petitioners contend. Petitioners’ argument that the distributions in question were made in partial liquidation of the company, as defined in section 115 (i), is founded upon their contention that the cancellation of 1,500 shares of stock in 1942 was related to the distributions of $75,000 each in 1940; or, in another manner of statement, that those two distributions were made m 1940 in redemption of 1,500 shares of stock, despite the lapse of time between the distributions and the retirement of the stock, and despite the absence of any expression in the resolutions which declared the distributions to be “dividends” to state that stock was to be redeemed and canceled. Respondent denies the correctness of petitioners’ contentions. He contends that the distributions in question were ordinary dividends as defined in section 115 (a). In the event that it is held that the distributions were made in cancellation and redemption of 1,500 shares of stock, respondent then contends that section 115 (g) must be considered to determine whether the company canceled its stock at such time and in such manner as to make the distributions and cancellation of stock in whole or in part essentially equivalent to the distribution of a taxable dividend. Petitioners contend that in 1940 there was an intention to partially liquidate the Slate Co. because it was decided to sell the securities in which funds of the company had been invested, and because there was concern over the possible effects on the slate goods business of actions of Edward L. Kraus, Jr., following a decision not to take him back into the business. Petitioners allege that the company had been conducting two businesses, a slate goods business and an investment business, and that upon the decision to sell the securities it followed that part of the company’s business was being terminated, and, hence there was a partial liquidation. Upon a careful review of all the evidence, we must conclude that the concern in 1940 over the activities of Edward L. Kraus, Jr., was not the controlling reason for selling the securities and distributing the proceeds, and that the facts do not show an intention to partially liquidate the company because of those activities. There was no evidence in 1940 of a decline in business or profits or even the prospect of losing business because of the attitude and actions of Edward. The business continued after the sales of the securities with increased profit, and it was conducted in the same way as before. On this point, the argument of petitioners is rejected as without merit. We must also reject petitioners’ argument that the Slate Co. conducted two businesses, one of which was an investment business. We have set forth in the findings of fact substantially all of the evidence of record relating to the investment account of the Slate Co. The Slate Co. was organized to conduct a business of fabricating school slates and products using slate materials made of a particular kind of slate, and it has always conducted that business. The business was conducted profitably and profits were accumulated. The need for capital in the business is best shown by the size of inventory carried and the cost of fixed assets such as plant and equipment. Taking a year close to 1940- we find that the balance sheet of January 1,1937, shows plant and equipment having a cost of $160,546. In 1936 the depreciated value was $27,772. Balance sheets for subsequent years show small annual additions to machinery and equipment so that as of January 1, 1942, the cost of plant and equipment was $171,147 and the depreciated value was $34,617.08. Over the period from 1927 to 1939, the inventory of the company ranged from $23,752 to $44,946 annually. There is evidence that the company requires working capital of about $146,000. That estimate appears to be liberal. The paid-in capital was $50,000, plus $100,000 capitalized in 1922 out of earnings. The record does not show when the company began investing its surplus funds in securities, or why. But there is testimony that the securities were not used in any way for the purpose of the manufacturing business, or for securing loans and credit. Thus it appears to be a fact that the funds set aside in securities were not needed in the conduct of the business during the time securities were owned. In 1927 and 1928 large sums of cash were on hand, $147,296 and $124,016. In the same years the company owned securities which presumably cost $146,258 and $215,016. Total net earnings from 1913 to 1927 aggregated $348,387.59, from which only $49,500 had been distributed in dividends, leaving a net amount of $298,887.59 of accumulated profits. The purpose of capitalizing $100,000 of earnings in 1922 has not been shown, but, assuming arguendo that none of that sum was invested in securities, there remained about $198,000 of surplus earnings. The logical inference is that the surplus was invested in securities. Testimony supports the inference. It is a customary business practice to invest surplus funds, for money is not left idle. The securities yielded income to the company in interest and dividends, about $10,000 a year. There were sales of securities, sometimes at a loss. The only basis for the contention that the Slate Co. engaged in an investment business is that it owned securities. But the ownership of such assets, even though productive of income, does not lead to the conclusion that an investment business was conducted. The argument is made that an investment business was conducted of course to support the contention that there was a partial liquidation of the company when the securities were sold. But the liquidation of assets of the character we have here does not necessarily result in a liquidation of a “business,” nor does the fact that the $150,000 which was distributed was most of the proceeds from the sale of securities stamp them as liquidating distributions. See W. E. Guild, 19 B. T. A. 1186, 1206. If the securities represented the investment of accumulated profits, as we are compelled to conclude, the sales of the securities in 1940 operated to return to the company a fund of accumulated profits. The distribution of that fund to stockholders is the matter under consideration. Whether or not the distribution was a distribution of dividends under section 115 (a) is to be determined by particular tests under the statute. We think the question at issue must be decided with due consideration of the fact that the Slate Co. conducted a profitable manufacturing business throughout the years in the same way and with adequate working capital apart from the existence of the investment account, both before and after the securities were sold for cash. Therefore, we reject the argument, that the company’s business included an “investment business” and that the decision to sell the securities was evidence of a partial liquidation of the company. It is concluded that the business of the Slate Co. was the business of manufacturing slate products. There is no evidence that the business of the company was in process of liquidation in 1940. The question of whether a corporation is in liquidation is one of fact. T. T. Word Supply Co., 41 B. T. A. 965, 981. Furthermore, there is an abundance of evidence to show that the decision to sell investments which had been held for many years,was impelled by the strong desires of the trustee of trusts in existence in 1940, owning one-half of the stock of the Slate Co., to put the trusts in a more secure position. The trustee desired distribution of the fund which was tied up in the securities. Cf. Isaac W. Frank Trust of 1927, 44 B. T. A. 934, 937. For several years the trustee had suggested that the Slate Co. should distribute its accumulated surplus, and some dividends had been paid out of surplus instead of out of current earnings. The surplus funds of the company were not invested in securities legal for trust funds. The evidence strongly suggests that the trustee of the trusts owning 50 percent of the stock of the company was fearful that the surplus funds, if left in the securities owned by the company, might be lost or decreased. In fact, a loss was sustained upon the sales of the securities. Thus the sales of the securities in 1940 were not made for any business need of the Slate Co., but for the benefit, if not the protection, of the trusts owning stock in the company. At the date of the death of Edward L. Kraus in 1926, a substantial part of the value of the stock which passed to the trusts he created lay in the accumulated surplus of the company which was invested in securities. The trustees desired to preserve that value as far as possible and, at least, to take the surplus fund away from the chances of dissipation or diminution. The word “liquidate” has a restricted meaning in section 115 (c). The popular sense of the word does not aid petitioners. Partial liquidation in the statute is restricted in its application to “distributions by a corporation in complete cancellation or redemption of a part of its stock.” Cf. Beattie Investment Co. v. United States, 101 Fed. (2d) 850, 852. The question is whether there was a partial liquidation as defined in the statute. W. C. Robinson, 42 B. T. A. 725, 785. “It is clear that the statute contemplates partial liquidations of corporations, accompanied by a partial retirement of outstanding stock.” Commissioner v. Cordingly, 78 Fed. (2d) 118. There was no cancellation of capital stock at the time the distributions were made in 1940, and there is no evidence that the stockholders and directors intended that any capital stock would be retired. Resolutions' were adopted declaring dividends. They were neither called liquidating dividends nor declared to be in payment of any stock to be retired. There was no plam to liquidate the business conducted by the company, as shown by facts existing before, during, or after 1940. See A. J. Long, Jr., 5 T. C. 327, 331, 335. It is true that later, in December of 1941, after some correspondence with deputies of the Commissioner, who had determined that the distributions were dividends, a resolution was adopted to retire and cancel 1,500 shares of stock. We said in W. E. Guild, supra, that: Liquidation is not a technical status which can be assumed or discarded at will by a corporation by the adoption of a resolution by its stockholders, but an affirmative condition brought about by affirmative action, the normal and necessary result of which is the winding up of the corporate business. See, also, Holmby Corporation, 28 B. T. A. 1092, 1103; affd., 83 Fed. (2d) 548. The situation existing in 1940, when dividends of $150,000 were declared, was not one of a corporation in process of liquidation, as we have discussed at length above. Upon the facts as we understand them, the later resolution to cancel half of the outstanding stock could not operate retroactively to the 1940 distribution so as to fit the provisions of section 115 (i), because there was no plan in 1940 to liquidate the business and no affirmative action to that end had been or was being taken. To recognize the subsequent cancellation of stock as part of the 1940 distribution would be to allow the company to assume a technical status of liquidation by the mere adoption of the 1941 and 1942 resolutions. The company was a going concern in 1940 and thereafter. We must regard the sales of the securities, sales of assets which were not being used in the business and which had not been used in the business, as only a return to cash of invested surplus, not as a liquidation of the company, in part. The situation here is like that in Tate v. Commissioner, 97 Fed. (2d) 658; certiorari denied, 305 U. S. 639, where a corporation sold securities and distributed the proceeds, $731,250, to stockholders. There no stock of the corporation was retired at the time of the distribution, or afterward, the chief difference from this case. Otherwise the facts in the Tate case closely resemble the facts here, particularly in the unusually large size of the distribution. It was held that the distribution was not in partial liquidation, but was a dividend. We recognize the force of Hellmich v. Hellman, 276 U. S. 233, and find it a guide here. It points to the distinction between distributions to stockholders by a going concern, and distributions to stockholders in the liquidation of a corporation. Judged by the recognized meaning of the term liquidation, see Mabel I. Wilcox, 43 B. T. A. 931, 939; affd., 137 Fed. (2d) 136, there was no liquidation of the Slate Có. to which the distributions in question were an accompaniment. As in the Wilcox case, all that was done here was to distribute a portion of the accumulated profits which were not needed in the normal course of the company’s business. See also John K. Beretta, 1 T. C. 86, 94; affd., 141 Fed. (2d) 452; certiorari denied, 323 U. S. 720. There an interest in property was sold by a corporation and the proceeds of the sale were distributed to stockholders, just as here securities were sold and the proceeds were distributed. It was held that there was not a partial liquidation. We can not accept as evidence that there was an intent in 1940 to cancel stock, a letter of Steckel dated May 20, 1941, written on the letterhead of his law firm and addressed to a deputy of the respondent, saying that the distributions in 1940 were “liquidating dividends” and that “in line with the policy of liquidation commenced in 1940,” the capital stock would be reduced 50 percent in 1941. That letter was sent in reply to letters from the Commissioner advising the company that the distributions were held to be dividends. We can not pass lightly over the fact that no resolution to cancel or redeem part of the company’s stock was adopted until after advice was received in 1941 from a deputy of the Commissioner that the distributions of $150,000 would be treated as ordinary dividends. The decision in December of 1941 to cancel 1,500 shares of stock must be recognized to be an afterthought in view of the lack of evidence that there was an intent in 1940 to cancel stock at or about the time the distributions were authorized. While the question now under consideration arises under section 115 (c), and we do not now refer to section 115 (g), the matter of intent of the corporation in considering the question under section 115 (c) is just as important as it is when section 115 (g) is being considered. Here the intent of the corporation in 1940 was bound up with the demands of the trustee of certain trusts, and the distributions were made primarily for the benefit of the trusts which were stockholders. They were not made “primarily from the standpoint and concern of the corporate business.” Rheinstrom v. Conner, 125 Fed. (2d) 790. Cancellation of stock was not a matter under consideration in 1940 by the stockholders and directors. Under these circumstances and upon the evidence, we must conclude that the distributions in 1940 were not made in cancellation of part of the corporation’s stock. The 1940 distributions must be treated in the light of what was done in 1940. The subsequent cam cellation of 1,500 shares of stock in 1942 must be regarded as separate and apart from the 1940 distributions, because no plan of liquidation had been adopted. See Alice H. Bazley, 4 T. C. 897; affd., 155 Fed. (2d) 237. The effect of the cancellation of 1,500 shares of stock in 1942 was simply to reduce capital and increase surplus by $75,000, as the balance sheet of January 1, 1942, shows. It is held that the distributions of $150,000 in 1940 were riot liquidating dividends under section 115 (c) and 115 (i). In view of our conclusion above, it is unnecessary to. consider any alternative question under section 115 (g). However, if contrary to our view, there was a cancellation or redemption of stock, it was, we think, at such time and in such manner as to make the two distributions of $75,000 each and cancellation or redemption essentially equivalent to the distribution of taxable dividends; and, since the entire amount of $150,000 so distributed represented a distribution of earnings or profits accumulated after February 28, 1913, it was properly treated as a taxable dividend. See sec. 115 (g). Wilcox v. Commissioner, 137 Fed. (2d) 136; McGuire v. Commissioner, 84 Fed. (2d) 431; certiorari denied, 299 U. S. 591; Flanagan v. Helvering, 116 Fed. (2d) 937; Rheinstrom v. Conner, supra; J. Natwick, 36 B. T. A. 866; Robinson v. Commissioner, 69 Fed. (2d) 972; Brown v. Commissioner, 79 Fed. (2d) 73; W. & K. Holding Corporation, 38 B. T. A. 830; Bass v. Commissioner, 129 Fed. (2d) 300; Smith v. United States, 121 Fed. (2d) 692; Alice H. Bazley, supra. Mary Dupont Faulkner, 3 T. C. 1082, and George E. Mason, 3 T. C. 1087, cited by petitioners, are not in point. Neither are Ward M. Canaday, Inc., 29 B. T. A. 355; affd., 76 Fed. (2d) 278; certiorari denied, 296 U. S. 612; Holmby Corporation, supra; and Milton Tootle, Jr., 20 B. T. A. 892; affd., 58 Fed. (2d) 576. Harold F. Hadley, 1 T. C. 496, and John K. Beretta, supra, cited by respondent are not squarely in point, but they lend support to the conclusion reached. It is immaterial that the decree of the Orphans’ Court of Pennsylvania, which was entered to adopt an agreement of the counsel before that court, allocated the $150,000 distributed to the trusts owning stock of the Slate Co. to the corpus of the trusts. Ella P. Burdick, 29 B. T. A. 731; affd., 76 Fed. (2d) 672. The question presented, whether the distributions were liquidating distributions, is not determined by the way they were held in the trusts, subsequently. In Docket Nos. 4481 and 4541 there should be recomputations of the deficiencies, for there is no contention made that the petitioners in those cases are taxable upon dividends distributed to the trusts created for their benefit by Arthur H. Kraus. It is our understanding that only the trusts are taxable on the dividends, Docket Nos. 4500, 4501, 4502, and 4508. Accordingly, Decisions will be entered v/nder Bide 60 in Docket Nos. 4481 and 4541. Decisions will be entered for the respondent in Docket Nos. 4600, 4601, 4602, and 4503.