CHANDRAKANT B. PATEL and S. C. PATEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Patel v. Commissioner
Docket No. 4542-85.
United States Tax Court
T.C. Memo 1988-33; 1988 Tax Ct. Memo LEXIS 33; 55 T.C.M. (CCH) 2; T.C.M. (RIA) 88033; February 1, 1988. *33 (1) P and his wife owned several motels during the years in issue. They operated some motels themselves and leased others to T, a corporation owned by them. Ps and their family resided in an apartment in one of such motels and continued to do so after such motel was leased to T. Held, Ps received constructive dividends from T equal to the fair rental value of the apartment furnished to them by T. Held, further, the Commissioner's determinations with respect to numerous items of income redetermined. Held, further, Ps are not entitled to investment tax credits on property leased by them for use in the motels operated by them. (2) P received funds during the years in issue from G, an acquaintance in Zambia. P and G had an understanding that P was to hold such funds until such time as G emigrated to the United States. P and G had no written agreement governing the use of such funds. Held, under the facts and circumstances, P served as a trustee with respect to the funds received from G. Therefore, P need not include such funds in income in the years received. (3) In 1979, P, acting on behalf of an acquaintance, V, located and arranged for the purchase of *34 F Apartments. The parties agreed that the transaction would be accomplished by having T purchase F Apartments from the seller and immediately resell such property to V. The parties also agreed that T would receive a profit of $ 25,000 as compensation for P's efforts in arranging such transactions. Held, P acted in his individual capacity and not as an agent of T in arranging for the purchase and resale of F Apartments. Therefore, P is taxable on the gain realized on such resale. (4) Held, Ps are liable for the additions to tax for negligence under sec. 6653(a), I.R.C. 1954. Steven R. Wolfson and Joy C. Al-Sofi, for the petitioners. Donna K. Robason, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in the petitioners' Federal income taxes of $ 162,175.41 for 1979 and $ 152,547.25 for 1980. In addition, he determined that the petitioners were liable for the addition to tax under section 6653(a), Internal Revenue Code of 1954, [1] of $ 8,108.77 for 1979 and $ 7,627.36 for 1980. After concessions by both *37 parties, the issues for our decision are: (1) whether the petitioners received interest and other items of income in 1979 and 1980 in the amounts determined by the Commissioner; (2) whether the petitioners properly allocated the cost of a motel purchased by them among the depreciable and nondepreciable assets; (3) whether the petitioners received constructive dividends in 1979 and 1980 equal to the value of lodging furnished to them by a corporation controlled by them; (4) whether the petitioners must include in income capital gains realized on the sale of a motel complex in 1979; (5) whether the petitioners are entitled to investment tax credits with respect to equipment leased by them in 1979; and (6) whether the petitioners are liable for the addition to tax for negligence under section 6653(a) for 1979 and 1980. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Chandrakant B. and S. C. Patel, husband and wife, maintained their legal residence in Irving, Texas, at the time they filed the petition in this *38 case. The petitioners filed their joint Federal income tax returns for 1979 and 1980 with the Internal Revenue Service Center at Austin, Texas. They also filed an amended Federal income tax return for 1979, but such return was not processed by the Commissioner. Mr. Patel will sometimes be referred to as the Petitioner. The petitioner is a naturalized U.S. citizen who came to this country from India on September 2, 1965. He received a master's degree in industrial engineering from Stanford University in 1966 and later received a master's degree in management science from Johns Hopkins University. After completing his formal education, he worked for several large corporations until the mid-1970s. At such time, he went into the business of buying, operating, and selling motels. On June 14, 1979, the petitioner formed Todo Corporation (Todo). He and his wife owned all the outstanding stock of Todo. Todo reported its income using a tax year ending May 31. We shall identify a tax year by the calendar year in which it ends. The petitioner was employed by Todo during the years in issue. There is no indication in the record as to what his duties were with the company. The *39 petitioners also owned 79 percent of the outstanding shares of Sushil Corporation (Sushil). The remaining 21 percent of sushil's shares was owned by the petitioner's father, Bhula. In 1976, the petitioner purchased Alamo Plaza Hotel Courts (Alamo Plaza). Such hotel was located in Dallas, Texas. There is no indication in the records as to the purchase price paid by the petitioner for the hotel. On May 1, 1978, the petitioners purchased Dallas Oak Cliff Travelodge (Travelodge) for $ 662,566. Such hotel was also located in Dallas. The contract between the motel's seller and the petitioners did not specify the portion of the purchase price attributable to each asset acquired. The petitioners failed to obtain an appraisal of such assets at the time of purchase. For Federal income tax purposes, the petitioners allocated $ 300,000 of the purchase price to the building, $ 150,000 to the furniture and fixtures, $ 100,000 to machinery and other equipment, and $ 112,566 to the land on which the motel is located. [2]
*40 On July 21, 1978, the petitioner purchased Palace Courts Motel for $ 80,099. Such motel was located in Dallas. On July 23, 1979, the petitioner sold the motel to Chinu and Jagruti Shah for $ 99,058. On July 1, 1980, the petitioner purchased Rest-a-Day Motel in Dallas from his brother Bipin. On July 1, 1979, the petitioner leased Travelodge to Todo for a lease term from July 1, 1979 to May 31, 1981. He also leased Alamo Plaza to Todo for a lease term from July 1, 1979 to September 30, 1980. The lease provided that Todo shall pay total rent of $ 243,000 to the petitioner for both hotels over the life of the lease. The lease provided that such rent shall be "payable in draws mutually agreed upon by the parties involved." The lease granted the petitioner "the right to defer, waive or otherwise change the time, terms and method of payment through unwritten agreement with an authorized representative" of Todo. On their Federal income tax returns, the petitioners reported receiving no income from such lease in 1979 and rental income of $ 109,604.91 in 1980. In October 1979, Consolidated Freightways issued a check to Todo for $ 15,720 for the lodging of its truck drivers at *41 Travelodge in September 1979. Such check was endorsed by the petitioner and used to purchase a certificate of deposit in Todo's name at the Trinity National Bank of Dallas. Todo did not report such amount as income on its Federal income tax return for 1979. Travelodge had two apartments for use by long-term residents of the motel. Such apartments were available for rent for a minimum of $ 350 per month. During 1979 and 1980, the petitioners resided in one of such apartments. The petitioners' three children and Mr. Patel's father, Bhula, lived with them during such time. Until 1978, Bhula and a partner were engaged in business in India. In 1978, Bhula sold his interest in the business to his partner for $ 50,000. In 1979, Bhula made a gift of the sales proceeds, less a $ 5 bank charge, to the petitioners and to Bipin. The petitioners received $ 24,997.50 of such amount. Bipin also received $ 24,997.50. While on a visit to Zambia in 1970, the petitioner met Govind Patel (Govind). Govind, a native of India who was a resident of Zambia, was a wholesaler of furniture, clothing, and other articles. At the time he met the petitioner, Govind was concerned that the political *42 instability of Zambia might eventually force him to leave the country. To prepare for such a possibility, Govind made arrangements to transfer his wealth from Zambia to the petitioner in the United States. During the 1970s, Govind sold goods from his business in Zambia to B. G. Patel (B. G.) in Panama. Rather than receiving payment directly for such goods, Govind instructed B. G. to send the money to the petitioner in the United States. In 1979, the petitioner received $ 100,000 as a result of such arrangement. Govind also gave his brother V. B. Patel (V. B.) money and instructed him to transfer such funds to the petitioner in the United States. The petitioner received two checks from V. B. in 1980. One check was in the amount of $ 38,000 and was written on April 8, 1980. The second check was for $ 22,000 and was written on April 16, 1980. Such checks were deposited by the petitioner in April 1980 in a bank account maintained by him at Trinity National Bank. Finally, the petitioner received $ 70,000 in cash and travelers checks directly from Govind and indirectly through mutual friends between May 1979 and March 1980. [3]
*43 Both the petitioner and Govind considered the money transferred out of Zambia to be Govind's. However, they had no written agreement requiring the petitioner to segregate the funds or to hold any income earned on such funds for Govind. The petitioner commingled the funds which he held for Govind with his personal and business funds. He kept for himself the income earned on such funds. In 1979, the petitioner was engaged by R. D. Patel (R. D.) to search for a suitable real estate investment for him. The petitioner located a satisfactory property, Flora Apartments in Dallas, and arranged for its purchase. The parties to such arrangement agreed that Todo would purchase the property from its owner and immediately sell it to R. D. Such parties also agreed that Todo would receive a $ 25,000 profit as compensation for the petitioner's efforts in arranging the transaction. On June 15, 1979, Todo purchased Flora Apartments in Dallas, Texas, for $ 125,000.00. On the same day, Todo sold such property to R. D. for $ 150,000.00. As partial payment for his purchase, R. D. executed two promissory notes in favor of Todo. One promissory note was for $ 40,000.00 and called for payments *44 to be made on or before July 15, 1979, and on or before December 15, 1979. The other promissory note was for $ 45,000.00 and called for payments of $ 404.88 to be made to Todo each month. During 1979 and 1980, the petitioner deposited such monthly payments directly into a savings account maintained by him at Trinity National Bank. Todo did not list the promissory notes as assets on the balance sheets attached to its Federal income tax returns for 1980 and 1981. Todo also failed to report the gain realized on the sale of Flora Apartments and the interest attributable to the monthly payments on such returns. On March 10, 1979, the petitioners leased a telephone system from Universal Communications Systems, Inc. (UCS), for use in Travelodge. The equipment had an estimated life of 10 years and a fair market value of $ 35,360 at such time. Upon execution of the lease, UCS furnished the petitioners with a statement of its election to pass through the investment tax credit available with respect to such property. On August 20, 1979, the petitioners leased a television theft alarm system from RCA for use in Alamo Plaza. The equipment had a fair market value of $ 5,891 at such *45 time. Upon execution of such lease, RCA furnished the petitioners a document which stated, "We are precluded, under IRS regulations, from issuing Investment Tax Credit Election Certificates on your lease contract. In lieu thereof, we are issuing this notice of the Fair Market Value of the equipment covered in your lease for your tax treatment." The petitioners claimed investment tax credits with respect to the property leased by them in their Federal income tax return for 1979. They attached both the waiver form received from UCS and the document received from RCA to such return. They did not sign either document to indicate that they consented to receive the investment tax credits available with respect to the property leased by them. In September 1979, the petitioners furnished funds to Todo to enable such corporation to purchase in its name a certificate of deposit for $ 185,000 from Trinity National Bank. When such certificate matured in October 1979, Todo combined the proceeds and other funds furnished by the petitioners to purchase another certificate in its name for $ 250,000. The petitioners and Todo used the same procedure to purchase additional certificates of *46 deposit during 1979 and 1980 from Trinity National Bank, Chase Manhattan Bank, and Exchange Savings and Loan Association. The last of such certificates was purchased from Chase Manhattan Bank and had an ending balance of $ 582,324.42 when it matured on September 25, 1980. At such time, the petitioners transferred $ 389,709.26 of such amount to a personal savings account maintained by them at Royal Savings Bank. The remaining amount was used to purchase another series of certificates of deposit in Todo's name at Exchange Savings and Loan. In all, Todo earned interest income of $ 33,415.67 in its 1980 tax year and $ 37,136.35 in its 1980 tax year from such certificates. On its Federal income tax returns, Todo reported interest income of $ 27,171.01 for 1980 and $ 50,744.42 for 1981. Such returns provide no details as to the source of such interest income. In January 1983, the Commissioner began an examination of the petitioners' 1979, 1980, and 1981 Federal income tax returns. The Commissioner's agent, Katie Widenor, was assigned to perform such examination. The petitioners were initially unwilling or unable to provide Ms. Widenor with all the records requested by her. She *47 was later able to obtain such records by issuing summonses to banks at which the petitioners maintained accounts. In her examination, Ms. Widenor reviewed bank statements, cancelled checks, deposit slips, and other documents relating to the petitioners' bank accounts. In addition, she reviewed the records arising from any purchase or sales of property and any loans involving the petitioners. Ms. Widenor primarily used the bank deposit method to reconstruct the petitioners' income for the years in issue. She analyzed the deposits made to the petitioners' bank accounts during such years and attempted to trace the sources of such deposits. The petitioners were unable to identify deposits totalling $ 11,947 in 1979. During her investigation, Ms. Widenor also discovered the short-term certificates of deposit purchased by Todo during the years in issue. After tracing the sources of funds used to purchase such certificates, she concluded that $ 8,288 of the interest earned on such certificates in 1979 and $ 36,897 earned in 1980 was attributable to the funds furnished by the petitioners. In examining the petitioners' bank records, Ms. Widenor did not see any expenditures for *48 clothes, groceries, entertainment, or other personal items. Her experience as a revenue agent led her to conclude that the petitioners paid for such items with funds that could not be traced through their bank accounts. She used cost-of-living figures from the Bureau of Labor Statistics to determine that the petitioners received additional income of $ 18,013 in 1979 and $ 18,125 in 1980. Ms. Widenor calculated such amounts by referring to Bureau's estimate of the total annual costs of a higher budget for a four person family residing in Dallas, Texas. Since the petitioners resided rent-free in the apartment of Travelodge, Ms. Widenor reduced the bureau's estimate of annual personal living expenses by the fair rental value of such apartment. In his notice of deficiency, the Commissioner determined that the petitioners received income during the years in issue from interest payments, from amounts distributed to them by Todo, from unexplained bank deposits, and from other items. He also determined that the transfers to the petitioner by Govind resulted in taxable income to the petitioners in 1979 and 1980. He also reallocated the purchase price of Travelodge among the depreciable *49 and nondepreciable assets purchased by the petitioners. The Commissioner also determined that the petitioners received constructive dividends from Todo equal to the fair rental value of the apartment at Travelodge in which they resided during 1979 and 1980. He further determined that the petitioners realized ordinary and capital gains from payments received in 1979 and 1980 on the sale of motels owned by them. He also disallowed the investment tax credits claimed by the petitioners in 1979 with respect to the property leased from UCS and RCA. Finally, he determined that the petitioners were liable for the addition to tax for negligence under section 6653(a) for 1979 and 1980. [4]
OPINION The first issue for our decision is whether the petitioners received interest and *50 other items of income in 1979 and 1980 in the amounts determined by the Commissioner. In his notice of deficiency, the Commissioner determined that the petitioners received income as a result of amounts received from Todo or of amounts paid by Todo on their behalf. The petitioners claim that any such amounts received from Todo constitute dividend income and are taxable to them only to the extent allowable by section 301 and 316. In general, section 301 provides that a distribution of property made by a corporation to a shareholder with respect to its stock shall be included in such shareholder's gross income to the extent such distribution is a dividend under section 316. Sec. 301(a), (c). Section 316(a) provides that a distribution of property shall be a dividend if it is made by a corporation to its shareholders out of earnings and profits accumulated after February 28, 1913, or out of earnings and profits of the current taxable year. The petitioners bear the burden of proving that Todo had insufficient earnings and profits to cover the distributions which they received from it. *51 Fein-Marquart Associates, Inc. v. Commissioner,T.C. Memo. 1985-288; DiZenzo v. Commissioner,T.C. Memo. 1966-16; Rule 142(a), Tax Court Rules of Practice and Procedure.[5] The Patels presented no evidence to show that Todo lacked sufficient earnings and profits to cover such distributions, and we have no reason to believe that such was the case. Therefore, we conclude that the Commissioner is not prevented, for such reason, from taxing to the petitioners as dividends any distributions received from Todo. We now turn to the various items of income contained in the notice of deficiency. We shall address each item separately. The Commissioner first determined that the $ 15,720 check made payable to Todo by Consolidated Freightways was endorsed by the petitioners and used to purchase a certificate of deposit at Trinity National Bank. Accordingly, he determined that such amount constituted income to the petitioners in 1979. The Patels acknowledge that such check was mistakenly deposited into their personal bank account. They challenge the Commissioner's *52 determination only by arguing that he failed to show that Todo had sufficient earnings and profits to cause the distribution of such check to be taxed to the petitioners as dividend income. We have held that it is the petitioners who bear the burden of proving that Todo had insufficient earnings and profits and that they have failed to carry such burden. Therefore, we conclude that the amount received from Consolidated Freightways constituted dividends to the petitioners in 1979. The Commissioner also determined that $ 11,947 in unidentified deposits to an account maintained by the petitioners at Exchange Savings and Loan in 1979 constituted income to them in such year. The petitioners contend that they can now explain all but $ 4,147 of such amount. They claim that $ 4,800 is attributable to rental income from a house owned by them and that such amount was reported on Schedule E of their Federal income tax return for 1979. They also claim that $ 3,000 is attributable to an unidentified restaurant deposit. The Federal income tax return filed by the Patels for 1979 does in fact report rental income of $ 4,800, and we accept the petitioners' explanation as to this item. *53 However, the petitioners failed to introduce any evidence to further identify the purported restaurant deposit. For such reason, we hold that they have failed to sustain their burden of proof with respect to the claimed deposit. The next issue for our decision is whether the petitioners must report additional income in 1979 and 1980 attributable to interest earned on the certificates of deposit purchased by Todo in such years. The Commissioner's examination revealed that the petitioners supplied a substantial portion of the funds used to purchase such certificates therefore, he determined that the petitioners were taxable on the portion of the interest earned which was attributable to the petitioners' contribution of funds. The petitioners argue that Todo was the "owner" of the certificates of deposit and that therefore the interest earned on such certificates should be taxed to it. Determining the owner of property presents a question of fact to be decided after considering all the evidence in the record. Schoenberg v. Commissioner,302 F.2d 416 (8th Cir. 1962), *54 affg. a Memorandum Opinion of this Court. We have held that the holding of record title to property does not, of itself, control the determination as to the ownership of the income of the property. See Pleason v. Commissioner,22 T.C. 361 (1954), affd. 226 F.2d 732 (7th Cir. 1955). Of paramount importance is the actual control over the property and the enjoyment of profits from such property. See Taylor v. Commissioner,27 T.C. 361, 368 (1956), affd. 258 F.2d 89 (2d Cir. 1958). [6]
In this case, the petitioners furnished most of the funds used to purchase such certificates. They chose the amount to be invested and the terms of such investments. Finally, they transferred from Todo over $ 389,000 directly to a personal bank account maintained by them. In our view, such conduct shows the petitioners to be in actual control of the certificates of deposit. For such reason, we can only conclude that they were the owners of such certificates and are taxable on interest earned on such certificates. The next issue *55 for our decision is whether the petitioners received additional taxable income of $ 18,013 in 1979 and $ 18,125 in 1980. During her examination, the Commissioner's agent was unable to find evidence of any expenditures by the petitioners for clothes, groceries, or other personal items in 1979 and 1980. She concluded that the petitioners paid for such items with cash that had not been reported as income on their tax returns for such years. She used cost-of-living figures from the Bureau of Labor Statistics to determine that the petitioners received additional taxable income during the years in issue. This Court has approved the use of Bureau of Labor Statistics figures as an acceptable and reasonable method of reconstructing income. Giddio v. Commissioner,54 T.C. 1530, 1533 (1970). Once the Commissioner reconstructs a taxpayer's income in such manner and determines a deficiency in income in such manner and determines a deficiency in income tax, the burden is on the taxpayer to demonstrate that the Commissioner's determination is erroneous. Courtney v. Commissioner,28 T.C. 658, 665 (1957); *56 McAnelly Hardware Co. v. Commissioner,9 B.T.A. 361, 363 (1927). The petitioners do not dispute that the Commissioner is entitled to use the Bureau of Labor Statistics' cost-of-living figures to calculate their taxable income. However, they argue that the amounts determined by him must be adjusted to reflect certain items. They point out that Todo provided them with lodging at Travelodge and paid other personal expenses and claim that the Commissioner's determination should be reduced to take into account such costs. The Commissioner concedes that the Bureau of Labor Statistics' figures should be reduced by $ 4,862 in 1979 and $ 4,983 in 1980 to reflect personal expenses paid by Todo in such years. We conclude that the Bureau of Labor Statistics' cost-of-living figures, as adjusted by the Commissioner's concession, produce a reasonable estimate of the petitioners' additional taxable income for the years in issue. After reviewing the Commissioner's calculations, we believe that only one minor adjustment is necessary. The notice of deficiency shows that the Commissioner gave the petitioners credit for housing costs for only 6 months of 1979. The record shows *57 that the petitioners resided in the apartment at Travelodge during all of 1979 and that they in fact incurred no housing costs in such year. For such reason, the Commissioner's figures should be further reduced to remove entirely any estimate for housing costs in 1979. The Commissioner also determined that the petitioners failed to report interest income received by them in 1979 and 1980 in connection with the sale of the Flora Apartments. The promissory notes executed upon the sale by the purchaser of the property shows Todo to be entitled to payments made on such notes. However, the Commissioner's examination revealed that the petitioners deposited such payments directly into their personal account at Trinity National Bank. The petitioners argue again that since Todo was the "owner" of the promissory notes, the corporation is the proper taxpayer to report interest earned on such notes. Once again, determining the ownership of property is a question of fact. Schoenberg v. Commissioner,302 F.2d 416 (8th City. 1962), affg. a Memorandum Opinion of this Court. The ability to exercise control over the property and the income from such property is more important *58 than the holding of legal title in determining the ownership of such property. Taylor v. Commissioner,27 T.C. 361, 368 (1956), affd. 258 F.2d 89 (2d Cir. 1958). In this case, the petitioners deposited the payments received under the promissory note into their personal bank account. In our view, such conduct shows that the petitioners had the ability to ultimately control the proceeds from the promissory notes and that they "owed" such notes for tax purposes. For such reason, we conclude that the petitioners must report the interest received by them with respect to the promissory notes during the years in issue. The next issue for our decision is whether the petitioners must report additional income under the lease of Travelodge and Alamo Plaza to Todo, as determined by the Commissioner. Such lease required Todo to make total rental payments of $ 243,000.00, without any allocation between the motels. The lease also stated that the petitioner shall have the "right to defer, waive or otherwise change the time, terms and method of payment through unwritten agreement." In his examination, the Commissioner determined that the amounts reported by *59 the petitioners with respect to such lease failed to clearly reflect their income. For such reason, he determined in his notice of deficiency that the petitioners received additional income from such lease of $ 76,737.00 in 1979 and $ 9,685.00 in 1980. Section 482 provides that where the same interests own or control two or more businesses, the Secretary may allocate gross income or deductions among such businesses, if he determines that such allocation is necessary in order to prevent evasion of tases or clearly to reflect the income of such businesses. Section 482 applies whether or not such businesses are separately incorporated. The regulations state that the "purpose of section 482 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true taxable income from the property and business of a controlled taxpayer." Sec. 1.482-1(b)(1), Income Tax Regs. The standard to be applied in every case is that of an uncontrolled taxpayer dealing at arm's length with another *60 uncontrolled taxpayer. Sec. 1.482-1(b)(1), Income Tax Regs.
The Commissioner's authority to allocate income to clearly reflect income is broad and extends to any instance in which, by either inadvertance or by design, the taxable income of a controlled taxpayer is different than what it would have been had such taxpayer been dealing at arm's length. Boyer v. Commissioner,58 T.C. 316, 327 (1972). A determination made by the Commissioner designed to clearly reflect income will be sustained unless the taxpayer establishes that the Commissioner has abused his discretion. Hamburgers York Road, Inc. v. Commissioner,41 T.C. 821, 839 (1964). In this case, the lease in question grants the petitioner, as the lessor of Travelodge and Alamo Plaza, the absolute power to determine the amount of rent to be paid by Todo in any one taxable year. Such power allows the petitioner to manipulate the rental payments and thereby affords him complete control over when the total rent is realized and recognized for Federal income tax purposes. *61 In his notice of deficiency, the Commissioner allocated the amount of rent to be recognized by the petitioners for the years in issue by dividing the gross rental due over the lease term by the number of months in the lease. He then multiplied such monthly rent by the number of months in each tax year. We can find no abuse of discretion in such an allocated method, and in fact, in our view, such a method appears to be quite reasonable. For such reason, we hold that the petitioners received rental income for the years in issue in the amounts determined by the Commissioner. The Commissioner also determined that the petitioners failed to report $ 15,000 in rental income received from Sushil in 1980. the petitioners claim that they leased Alamo Plaza to Sushil in such year and that the amount determined by the Commissioner is attributable to such lease. They further contend that such amount was reported on Schedule E of their Federal income tax return for 1980. The record shows that Sushil did in fact lease Alamo Plaza from the petitioners beginning in October 1980 and that the petitioners reported $ 38,364 in rental income attributable to such motel in 1980. While their Federal *62 income tax return for such year does not identify the source of such income, we accept the petitioners' explanation that a portion of such amount is attributable to the payments from Sushil. The Commissioner also determined that the amounts received by the petitioners from Govind in 1979 and 1980 constitute income to them in such years. The petitioner argues vigorously that such amounts belong to Govind at all times and that he served merely as a trustee with respect to such funds. The petitioner claims that both he and Govind kept track of the amounts transferred and that he fully intended to return the entire principal amount to Govind upon his arrival in the United States. The Commissioner points out that the parties to the alleged agreement failed to execute a written agreement establishing the petitioner's obligation to repay the money. He also notes that the petitioner failed to segregate the funds and in fact used such funds to purchase certificates of deposit in his own name, without any indication that such funds were held by him on behalf of Govind. For such reason, he argues that the petitioner exerted sufficient control over the money to be considered the beneficial *63 owner of the funds and that such amounts should be considered income to him. After carefully considering all the evidence in the record, we accept the petitioner's explanation and hold that he did not receive taxable income as a result of the transfer of funds. In arriving at our conclusion, we find Govind's testimony to be particularly persuasive. He first testified that he often conducted business without written contracts and that he did not consider a written agreement to be necessary to protect his right to the money transferred to the petitioner. He also testified that he was concerned only with receiving, upon his arrival in the United States, the principal amount of the funds transferred to the petitioner. He stated that for such reasons, he did not know or care what the petitioner did with the money prior to such time. He also indicated that he did not want the petitioner to place the funds in a separate account or to otherwise segregate the funds, for fear that the Zambian government would somehow learn that he was transferring funds out of the country. Finally, he insisted at all times throughout his testimony, that the transferred funds were his money and that *64 he fully expected that such funds would be returned to him at some time in the future. We consider Govind to be a credible witness and accept his version of the arrangement between him and the petitioner. We recognize that there was no written document which memorialized the agreement with respect to the funds. Clearly, the absence of such a document made it difficult for the petitioner to prove that such an agreement exists. However, both the petitioner and Govind testified that individuals of Indian extraction are informal in their business dealings and often rely only on oral understandings to govern their legal relationships. In this case, the parties thereto did not need a written agreement to make them aware of their obligations, and in our view, their failure to execute such an agreement does not relieve the petitioner of the responsibility of returning the money to Govind in the future. In evaluating the testimony of the petitioner and Govind, we recognize that in some cultures, business may customarily be carried on differently than in the United States, and that in India, it may be customary to enter into arrangements involving substantial funds without written contracts. *65 The next issue for our decision is whether the Commissioner properly allocated the purchase price of Travelodge among the depreciable and nondepreciable assets acquired by the petitioners. They purchased Travelodge on May 1, 1978, for $ 662,566. As a result of such purchase, they acquired the motel building, the land on which the motel was situated, and other fixed assets. They allocated $ 300,000 of the purchase price to the building, $ 112,566 to the land, and $ 250,000 to the other fixed assets. In his notice of deficiency, the Commissioner allocated $ 300,000 to the buildinge, $ 150,000 to the land, and the balance of the purchase price to other assets. The Commissioner reduced the building's purchase price by its estimated salvage value of $ 30,000 and determined that such building had an adjusted basis for depreciation purposes of $ 270,000. The petitioners bear the burden of not only provine such determination to be erroneous, but also to produce evidence from which another proper determination can be made. Lightsey v. Commissioner,63 F.2d 254, 255 (4th Cir. 1933), affg. 24 B.T.A. 1347 (1931). In preparation for trial, the petitioners *66 engaged Carl E. Wallace, an expert real estate appraiser, to render an opinion as to the fair market value of Travelodge as of December 1, 1978. In such opinion, Mr. Wallace indicated that the property had a fair market value of $ 389,128 on such date, of which $ 281,244 was attributable to the building and $ 107,884 was attributable to the land. Thus, Mr. Wallace found that the land comprised 27.72 percent of the property's fair market value as of December 1, 1978. The depreciation deductions which may be taken with respect to property are calculated by referring to such property's adjusted basis. Sec. 167(g); sec. 1.167(a)-1(a), Income Tax Regs. Therefore, the allowable deduction for depreciation cannot be based on Mr. Wallace's estimate of the fair market value of the building. However, we hold that the ratio of the separate value of the building to the value of the entire property established in his expert appraisal to be reasonable and helpful in calculating the adjusted basis of the building. The Commissioner determined that the cost of the land and *67 building was $ 450,000. Applying the percentages derived by Mr. Wallace to the cost determined by the Commissioner, we conclude that the land made up $ 124,740 of the purchase price of Travelodge. Similarly, the building made up $ 325,260 of such purchase price. After reducing such amount by 10 percent, as did the Commissioner, as an allowance for the building's salvage value, we hold that the petitioners may use $ 292,734 as their basis for depreciation purposes. See Williams v. Commissioner,37 T.C. 1099, 1107 (1962); sec. 1.167(a)-5, Income Tax Regs.
The next issue for decision is whether the petitioners received constructive dividends from Todo equal to the fair rental value of the apartment at Travelodge occupied by them during 1979 and 1980. Although the petitioners leased Travelodge to Todo beginning on July 1, 1979, they continued to reside in the apartment throughout the years in issue. The apartment was available for rent at $ 350 per month, and it is undisputed that such amount represents the fair rental value of such apartment. The Commissioner determined that the petitioners received constructive dividends equal to *68 the total fair rental value of the apartment. The petitioners contend that they did not transfer control of the apartment used for their living quarters when they leased the hotel to Todo. They further argue that they reduced the rental charged to Todo in the lease to reflect the interest rationed by them. However, the lease transferred control of the entire business premises of Travelodge to Todo and made no mention of any interest retained by the petitioners. Once the petitioners leased Travelodge to Todo, such corporation obtained substantially all the property rights associated with the motel, including the right to exclusive possession of the premises. The petitioners retained only the right to receive rent under the lease and the right to regain possession of the property upon termination of such lease. See Restatement, Property 2d, sec. 1.2, and Comment, sec. 12.1 (1977); see also Thompson, Real Property, sec. 1032 at p. 116 (1980). The petitioners presented no evidence to establish the total fair rental value of Travelodge during the years in issue. Therefore, we have no basis for finding that the petitioners reduced such fair rental value in computing the rent charged *69 to Todo under the lease to take into account any interest purportedly retained by them. Finally, the petitioners argue that they are entitled to exclude the fair rental value of the apartment under section 119. Section 119 provides that the value of lodging furnished to an employee by an employer shall be excluded from the employee's gross income if the lodging is furnished on the employer's business premises, furnished for the employer's convenience, and if the employee is required by his employer to accept such lodging in order to properly perform his duties. Sec. 1.119-1(b), Income Tax Regs. It is undisputed that the petitioner was employed by Todo during the years in issue and that the apartment was located on Todo's business premises. However, the petitioners introduced no evidence to show that Todo furnished such apartment for its own convenience or that the petitioner was required to accept such lodging in order to properly perform his job with Todo. Therefore, we hold that the petitioners failed to prove that they are entitled to exclude the fair rental *70 value of the apartment under section 119. Heyward v. Commissioner,36 T.C. 739, 746 (1961), affd. per curiam 301 F.2d 307 (4th Cir. 1962). We conclude that the petitioners received constructive dividends from Todo for living in the apartment at Travelodge during the years in issue. See Nicath Realty Co. v. Commissioner,T.C. Memo. 1966-246; see also International Artists, Ltd. v. Commissioner,55 T.C. 94 (1970). The next issue for our decision is whether the petitioners must include in their income the short-term capital gain realized upon the sale of the Flora Apartments. In 1979, the petitioner arranged for the purchase of such motel on behalf of R. D. Patel. The parties to the arrangement agreed that Todo would act as the purchaser of the motel and immediately resell the property to R. D. It also was agreed that Todo would receive a $ 25,000 profit on such resale. The Commissioner determined that the petitioners, rather than Todo, were taxable on such profit. As a general rule, the profits of a corporation will *71 not be taxed to its shareholders. See Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943). However, this Court has held, on a number of occasions, that shareholders are taxable on income or profits collected by their corporation, where such shareholders acted as individuals, and not as agents of the corporation, in earning such income. See, e.g., American Savings Bank v. Commissioner,56 T.C. 828 (1971); Morrison v. Commissioner,54 T.C. 658 (1970); Roubik v. Commissioner,53 T.C. 365 (1969); Davidson v. Commissioner,43 B.T.A. 576 (1941). In this case, it is clear from the record that the petitioner, acting in his individual capacity, was responsible for the gain on the sale. He testified that "I acted as an in-between, and since I had originally found the motel, which was on [the] market, I felt like I deserved some profit." In our view, such statement indicates that the $ 25,000 gain on the sale was attributable to the petitioner's individual efforts, rather than to his efforts on behalf of the corporation. For such reason, we conclude that the petitioners must report such gain *72 on their personal Federal income tax returns. See American Savings Bank v. Commissioner, supra.
The next issue for our decision is whether the petitioners are entitled to investment tax credits with respect to equipment leased by them from RCA and UCS in 1979. Section 48(d) permits a lessor of property to elect to treat the lessee as being the owner of such property for purposes of the investment tax credit. The regulations provide that such election is proper only if the property is new in the hands of the lessor and may be depreciated by him. Sec. 1.48-4(a), Income Tax Regs. The regulations also require that the lessee be the original user of such property. Sec. 1.48-4(a)(1)(iii), Income Tax Regs.
After carefully reviewing the record, we conclude that the petitioners have failed to establish that such requirements had been satisfied. They offered no testimony or documentary evidence to show that the leased property was new in the hands of the lessors. Further, the petitioners failed to show that they were the *73 original users of the property. For such reasons, we hold that they have failed to carry their burden of proving that they are entitled to the investment tax credits claimed by them. The final issue for our decision is whether the petitioners are liable for the addition to tax for negligence under section 6653(a) for 1979 and 1980. Section 6653(a) imposes such addition to tax if any part of the underpayment of tax is due to negligence or the intentional disregard of rules and regulations. The petitioners bear the burden of proving that the Commissioner's determination that they are subject to the addition to tax is erroneous. Rule 142(a); Courtney v. Commissioner,28 T.C. 658, 669 (1957). After carefully considering all the evidence before us, we conclude that the imposition of the negligence addition is justified. During the years in issue, the petitioner chose to conduct much of his business activity through Todo, a corporation in which he and his wife owned all the outstanding stock. However, the petitioners failed to keep records which separated their personal *74 business affairs from the affairs of Todo. Because of such failure, the Commissioner's agent was forced to examine numerous documents so she could calculate the petitioners' taxable income accurately. The addition to tax for negligence is justified where a taxpayer failed to keep proper records and made no serious effort to assemble and organize his affairs in order to make a proper return. See Zivnuska v. Commissioner,33 T.C. 226, 240 (1959); Sutor v. Commissioner,17 T.C. 64, 69 1951). The record also shows that the petitioner repeatedly failed to respect Todo's separate corporate identity. For example, he diverted to his own use the $ 15,720 check from Consolidated Freightways made payable to Todo. He also diverted to his own use the monthly payments due Todo under the promissory notes executed upon the sale of the Flora Apartments. The petitioners claim that they deposited the checks in their personal bank accounts by "mistake." In our view, the petitioner's disregard for Todo as a separate legal entity and their repeated commingling of personal *75 and corporate funds may be more properly characterized as negligence. We hold that such conduct caused a portion of the deficiency owed by them for the years in issue. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue. ↩
2. The depreciation schedule for Travelodge attached to the petitioner's 1979 Federal income tax return shows that they allocated $ 550,000 to the fixed assets acquired as a result of the purchase, including the building, furniture and fixtures, and machinery and equipment. There is no evidence in the record that the Patels acquired other tangible assets or any intangible assets in such purchase. In the absence of such evidence, we conclude that the portion of the purchase price not allocated by the petitioners to the fixed assets is attributable to the land on which the motel is situated. ↩
3. The record shows that the petitioner received $ 70,000 in cash and travelers checks during the years in issue. However, the Commissioner determined that only $ 35,000 of such funds constituted unreported income in 1980. There is no explanation in the record of why the Commission did not seek to tax the petitioners on the remaining $ 35,000. ↩
4. At trial and on brief, both parties conceded numerous items contained in the notice of deficiency. The petitioners also failed to make arguments on brief with respect to items which they placed in dispute on their petition and which they did not expressly concede. We can only conclude that the petitioners have abandoned their challenge of the Commissioner's determinations with respect to such items. ↩
5. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure. ↩
6. See also Federman v. Commissioner,↩ a Memorandum Opinion of this Court entered June 27, 1952.