ESTATE OF E. ALVIN FOSTER, DECEASED, EVE JOHNSON, EXECUTRIX, AND EVELYN FOSTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Foster v. Commissioner
Docket No. 348-87.
United States Tax Court
T.C. Memo 1988-437; 1988 Tax Ct. Memo LEXIS 460; 56 T.C.M. (CCH) 163; T.C.M. (RIA) 88437; September 14, 1988. William E. Frantz, for the petitioners. Willard N. Timm, Jr., for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioners' 1982 Federal income tax return of $ 101,911.44 and additions to tax pursuant to section 6661[1] in the amount of $ 10,191.44. The issues we must decide are (1) whether petitioners received taxable dividends in 1982 from their closely held corporations and (2) whether petitioners are liable for additions to tax pursuant to section 6661. *462 FINDINGS OF FACT E. Alvin Foster ("decedent") died on December 20, 1982. W. Alvin Foster and Esther Eve Foster Johnson, original co-executors of decedent's estate, and decedent's son and daughter, respectively, resided in Georgia at the time the petition was filed in this case. W. Alvin Foster died on June 22, 1987, leaving petitioner Eve Johnson as the sole executrix of the estate. Petitioner Evelyn Foster, widow of decedent, lived in Forest Park, Georgia at the time the petition was filed in this case. In 1952 decedent acquired a tract of land in Clayton County, Georgia known as the Lake Shamrock property consisting of 138 acres. He later transferred a one-fourth interest in this property each to Clem Pylant, Fred Durden and W. E. Foster (decedent's brother) who with the decedent, on May 29, 1954, formed a partnership for the purpose of building and operating a lake for business and pleasure. Decedent subsequently purchased the one-fourth interest of Clem Pylant for $ 15,000 giving decedent a one-half interest in Lake Shamrock property. On October 14, 1955, decedent, W. E. Foster, and Fred Durden incorporated and formed Shamrock Enterprises, Inc. ("Shamrock"). Its Articles *463 of Incorporation stated: The object of said corporation is pecuniary gain and profit, and the general nature of the business to be transacted is as follows: to buy, build, construct, operate or sell lakes and ponds for boating, swimming and fishing * * *. To do all acts and things generally associated with the operation of a lake, pond or body of water for the recreation or amusement of the general public. To buy and sell and otherwise deal in all forms of property, both real and personal.
On February 25, 1958, decedent, W. E. Foster and Durden transferred to Shamrock by warranty deed their interest in the Lake Shamrock property. The acreage transferred was 138 acres. Decedent owned 50 percent of the outstanding stock of Shamrock while W. E. Foster and Fred Durden each owned 25 percent of Shamrock. Shamrock had a business license, filed annual reports with the State of Georgia, and generated income through its operation of Lake Shamrock as a fishing lake. Shamrock had its own checking account into which funds were deposited and from which funds were withdrawn. Shamrock had at least two employees, requested and received a tax identification number, and filed Employer's Quarterly *464 Federal Tax Returns. Shamrock paid sales tax to the State of Georgia, acquired and transferred property in its own name and borrowed money and used its property as security for such loans. Shamrock owned and renewed a six-months money market certificate as of December 28, 1982. Decedent never formally dissolved Shamrock prior to his death. Decedent was Shamrock's president and registered agent. Ned Durden was listed with the State of Georgia as Shamrock's secretary-treasurer. Marion Mann Carter was a director of Shamrock and served as Shamrock's bookkeeper. Some years later decedent loaned Shamrock $ 25,000 to purchase the interest of W. E. Foster and $ 5,000 to purchase the interest of Fred Durden. On his death on December 20, 1982, decedent owned 100 percent of Shamrock. Decedent reported some of the income and loss from Shamrock on Schedule C of his 1973, 1974, 1975, 1976, and 1978, Federal income tax returns. During the period 1967 through 1969, decedent purchased five additional tracts of land totaling 83.6438 acres adjacent to the 138-acre tract owned by Shamrock. These five tracts were not transferred to Shamrock but were considered part of the "Lake Shamrock property. *465 " On June 9, 1978, the Clayton County Water Authority brought a condemnation action against the 221.6438-acre Lake Shamrock property (138 plus 83.6438), decedent, Shamrock and other interested parties. Decedent and Shamrock were represented by different attorneys in this proceeding. The parties named as defendants in this action and their interests in the property being condemned were as follows: (a) 221.6438 Acres of Land, the condemned Lake Shamrock property, consisting of the 138-acre tract owned by Shamrock and the adjacent 83.6438-acre tract owned by decedent. These tracts were referred to as Tracts I, II and IV in the proceedings. (b) Decedent, fee simple owner. (c) Shamrock Enterprises, Inc., fee simple owner. (d) The Citizens and Southern (C & S) Bank of Clayton County, holder of a security deed on the Lake Shamrock property in the original amount of $ 222,000. This security deed was marked "satisfied" on July 20, 1978. (e) City of Forest Park, interest unknown. (f) Clayton County Bank, holder of a security deed, in the original amount of $ 54,499.25, on at least part of decedent's property being condemned. This security deed was marked "satisfied" on July 10, 1978. *466 (g) Otis Calhoun and Lucy Mae Calhoun, fee simple owners only as to so-called Tract III being condemned. Their interest was minimal, limited to a disputed acre. (h) Kathyrn C. Gibbs, Judge, Probate Court, Clayton County Georgia, interest unknown. (i) Lucille S. Mills, Tax Commissioner, Clayton County, Georgia, apparent holder of a tax lien, at least respecting the Calhouns' 1978 taxes and title to one disputed acre. The appointed assessors in the case found that the defendants in the condemnation action should be paid $ 675,000 ($ 670,000 for Tracts I, II, and IV and $ 5,000 for Tract III). On January 30, 1979, a jury awarded the defendants in this condemnation action $ 773,500 plus damages in the form of interest in the amount of $ 4,042.46. This verdict resulted in an additional $ 102,542.46 being paid to the defendants. These funds were disbursed as follows: Payee
Amount
Decedent and Shamrock
$ 500,440.78
C & S Bank of Clayton County
222,388.50
Clayton County Bank
48,059.52
Lucille Mills
2,841.66
Decedent
1,906.00
Calhouns
1,906.00
As a result of the condemnation, all liens and claims against the Lake Shamrock property were satisfied. *467 Approximately $ 400,000 of the condemnation proceeds paid for Shamrock's 138-acre property were deposited in Shamrock's account. On June 22, 1979, Shamrock purchased a 2.1-acre parcel of land from Marion Mann Carter for $ 10,000. On June 25, 1981, decedent and Shamrock jointly purchased from Barclay Circle, Inc. a 164-acre tract of unimproved real estate located in land lots 122, 13, 20 and 21 of the 12th District of Clayton County, Georgia ("164-acre tract"). On December 9, 1982, shortly before decedent's death, Shamrock quitclaimed its interest in these lots to decedent for one dollar. Decedent's estate, on the Form 706, United States Estate Tax Return stated that the fair market value of the 164-acre tract as of the date of decedent's death was $ 297,000. [2]
On March 6, 1968, decedent incorporated Foster enterprises, Inc. ("Foster"). Decedent was Foster's president while his wife petitioner Evelyn Foster served as Foster's secretary-treasurer. Marion Mann Carter was Foster's bookkeeper. Foster was in *468 the business of owning and renting buildings and apartments… It maintained a checking account and records of its income and expenses. Foster had at least one employee, Marion Mann Carter, to whom it paid a salary. On September 28, 1982, Foster sold one of its properties to petitioner Evelyn Foster for $ 10,000. On the same day she resold the same piece of property to Mr. Dwight K. Ginn for $ 70,000. Respondent determined in the statutory notice of deficiency dated October 3, 1986, that the transfer on December 9, 1982, by Shamrock to decedent of its one-half interest in the 164-acre tract constituted a taxable dividend in 1982 in the amount of $ 148,500. Moreover, respondent determined that the transfer on September 28, 1982, by Foster to petitioner Evelyn Foster of real estate having a value of $ 70,000 for which she paid only $ 10,000 constituted a taxable dividend to petitioners in the amount of $ 60,000. Finally, respondent determined that petitioners were liable for an addition to tax pursuant to section 6661 computed at the rate of 10 percent. Respondent amended his answer to claim an increased addition to tax at a rate of 25 percent pursuant to Section 8002 of the *469 Omnibus Budget Reconciliation Act of 1986, 100 stat. 1951, effective October 21, 1986, increasing the section 6661 addition to tax to 25 percent of the underpayment attributable to a substantial understatement. OPINION The first issue we must decide is whether petitioners received taxable dividends in 1982 in the form of transfer of land from Shamrock to decedent and from Foster to petitioner Evelyn Foster. Respondent's determination of deficiency is presumptively correct, and petitioners have the burden of proving that the land transfers were not dividends from Shamrock and Foster. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners contend that decedent controlled the activities of Foster and Shamrock and treated their activities as his own, so that the corporations had no separate identity. Petitioners argue that, therefore, the corporations should be ignored for Federal income tax purposes and that the distributions of land by the corporations should not be treated as dividends to petitioners but as mere formalities having the effect of merging beneficial and legal ownership of the properties. *470 Petitioners rely on Taylor v. Commissioner,27 T.C. 361 (1956), affd. 258 F.2d 89 (2d Cir. 19958); Patel v. Commissioner,T.C. Memo. 1988-33; Commissioner v. Bollinger,    U.S.    , 1008 S. Ct. 1173 (1988); and Moline Properties Inc. v. Commissioner,319 U.S. 436 (1943). These cases do not support petitioners' contention that Shamrock and Foster should be ignored for Federal income tax purposes. These cases are to the contrary and actually stand for either or both of the following propositions: (1) that income is taxed to the one who earns it and (2) that corporations engaged in genuine business activities will not be disregarded for Federal income tax purposes, despite being controlled by a single shareholder. In Taylor the taxpayer established commodity trading accounts in the names of three relatives. Because she advanced all sums in these accounts and exercised complete control over deposits and withdrawals and over the operation of the accounts, we held that the profits earned on these accounts were taxable to the taxpayer and not to the nominal owners of the accounts. Similarly, *471 in Patel we held that the taxpayers were liable for income tax on interest earned on certificates of deposit nominally owned by the taxpayer's closely held corporation. Patel v. Commissioner,supra at 17. We did not disregard the corporate form. Indeed, in Patel the taxpayers were liable for income tax on other items of income that constituted constructive dividends received from their closely held corporation.
The corporate form of a corporation owned by a single shareholder is not lightly to be disregarded. Moline Properties, Inc., v. Commissioner,319 U.S. 436 (1943); cf. Haag v. Commissioner,88 T.C. 604 (19987), affd.    F.2d     (6th Cir. 1988); Keller v. Commissioner,77 T.C. 1014 (1981), affd. 723 F.2d 58 (10th Cir. 1983). Foster and Shamrock were separate, viable taxable entities despite their affairs being completely controlled by decedent unless they were so devoid of business activity that the corporate form was a "bald and mischievous fiction." Moline Properties, Inc. v. Commissioner,319 U.S. at 439. *472 In Moline Properties the Supreme Court held that a corporation having one shareholder who exercises total control over the corporation's affairs is nonetheless a separate taxable entity. The Court stated: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * [319 U.S. at 438-439.] In Commissioner v. Bollinger,    U.S.    , 108 S. Ct. 1173 (1988), the issue was not whether the corporate form should be disregarded but whether the corporation was the true agent of the taxpayer, its sole shareholder. The corporation held title to property as the taxpayer's nominee solely to secure financing for a real estate project. The Supreme Court held that the losses generated by the real estate project in that case were properly reported *473 by the taxpayer individually rather than by the corporation because the corporation was in substance and in form an agent of the taxpayer. Shamrock and Foster did not act as mere agents of the decedent. Neither was a mere title holder for decedent. Each corporation operated its own business in its own name and for its own account. Shamrock operated a fishing lake for business and pleasure and had income from its operations, while Foster owned and rented buildings and apartments from which it received income. Neither could bind decedent by its actions, and neither sought to. There was no showing here either that the corporations were shams or that they simply represented decedent as agents in his business transactions. The income received by each corporation was attributable to the business activities of each corporation. Each corporation actively conducted its own business apart from decedent's own personal or business interests. See National Carbide Corp. v. Commissioner,336 U.S. 422 (1949). Shamrock and Foster each had a separate business identity from decedent. Consequently, Shamrock and Foster should be treated as entities separate from petitioners *474 for Federal income tax purposes. The transfers of land from Shamrock and Foster to petitioners were, therefore, corporate distributions to shareholders. Petitioners further argue that the distributions represent a return of their original investment and capital gain because neither corporation had current or accumulated earnings and profits. Section 301(c)(2) and (3). Section 316 defines "dividend" as "any distribution of property made by a corporation to its shareholders" out of earnings and profits which, pursuant to section 301(c)(1), is taxed as ordinary income. When distributions are made by a corporation without current or accumulated earnings and profits, the distribution is first treated as a return of capital reducing basis in the stock, and after basis is recovered, is then taxed as capital gain. Section 301(c)(2) and (3). Petitioners have failed to prove that Shamrock and Foster had no current or accumulated earnings and profits at the time the distributions were made. These corporations both maintained books and records of their business (though the books and records could *475 not be found for trial). Petitioners did not offer the corporate records and the bookkeeper's testimony was vague, uncertain and based on faulty memory. Moreover, the evidence before us suggests more than sufficient earnings and profits to support dividend treatment. The condemnation of the Lake Shamrock property provided sufficient earnings to support dividend treatment on the distribution to decedent, and petitioners did not show any adjustments to those earnings. Approximately $ 400,000 of the condemnation proceeds paid for Shamrock's 138-acre property was deposited in Shamrock's account. Foster owned rental property and because petitioners have failed to adduce any evidence that would permit even a rough estimate of Foster's earnings and profits, ordinary income treatment is appropriate for the distribution of land worth $ 70,000 to petitioner Evelyn Foster who paid $ 10,000 for it. Petitioners alternatively argue that if Shamrock and Foster are recognized for Federal income tax purposes, the distributions of land to petitioners were distributions in complete liquidation pursuant to section 331(a). *476 Section 331(a)(1) provides that amounts distributed in complete liquidation of a corporation "shall be treated as in full payment in exchange for the stock." Accordingly, the gain included in a distribution in complete liquidation is taxed at capital gain rates if the stock, as in this case, was held for more than 6 months. Sections 1201, 1222.
The question of whether a corporation has been liquidated is one of fact on which petitioner has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933); Genecov v. United States,412 F.2d 556, 562 (5th Cir. 1969). Formal dissolution of a corporation under state law is not required for a complete liquidation. Pridemark, Inc. v. Commissioner,345 F.2d 35, 41 (4th Cir.3 1965), affirming in part and reversing 42 T.C. 510 (1964); Wier Long Leaf Lumber Co. v. Commissioner,173 F.2d 549, 551 (5th Cir. 1949), affirming in part and reversing in part 9 T.C. 990 (1947). Rather the inquiry must focus *477 on whether the corporation intended to and actually did wind up its affairs, gather its resources, settle its liabilities, cease engaging in business activity, and proceed to distribute its remaining assets to its shareholders. Kind v. Commissioner,54 T.C. 600, 605 (1970). "There must be a manifest intention to liquidate and a continuing purpose to terminate and dissolve the corporation. Its activities must be directed to that end." Baretta v. Commissioner,141 F.2d 452, 452 (5th Cir. 1944), affirming 1 T.C. 86 (1942), cert. denied 323 U.S. 720 (1944). Petitioners have not carried their burden of proving that the distributions from Shamrock and Foster were made in complete liquidation. As to Shamrock, the corporation purchased a 2.1-acre tract of land in 1979. There is no evidence in the record as to the disposition of this property. The corporation renewed a 6-month money market certificate as of December 28, 1982, the disposition of which was not shown. Moreover, the record is silent as to the disposition of all of the condemnation proceeds received by Shamrock. Finally, Shamrock filed Employee's Quarterly Federal *478 Tax Returns during 1979 through 1982. At best the evidence of Shamrock's intent to liquidate is speculative and inconclusive notwithstanding Shamrock's distributions to decedent. Foster transferred one of its properties to petitioner Evelyn Foster for $ 10,000. Petitioner offered no other evidence of Foster's intent to liquidate. The record is devoid of evidence pertaining to other properties that had been rented by Foster. Moreover, petitioner Evelyn Foster was not called to testify. "The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We conclude that petitioners have failed to prove that the distributions from Shamrock and Foster were distributions in complete liquidation. Consequently, we hold that the transfer by Shamrock to decedent of its one-half interest in the 164-acre *479 tract and the transfer by Foster to petitioner Evelyn Foster of $ 70,000 worth of real estate in exchange for $ 10,000 constituted taxable dividends in the amount of $ 148,500 and $ 60,000, respectively. We hold further that petitioners are liable for the addition to tax pursuant to section 6661 because of their failure to offer any evidence to show that their substantial understatement was supported by substantial authority or adequately disclosed on petitioners' return. The evidence of professional fees paid by petitioners to a law firm do not without explanation show that petitioners had substantial authority for the positions taken on their 1982 Federal income tax return regarding the land transfers from Shamrock and Foster. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the year in issue, unless otherwise indicated. ↩
2. The estate tax return and attached appraisal as well as the statutory notice reflect this tract as containing 165 acres. The one-acre difference is unexplained. ↩